## STATE OF MARYLAND, Use of JAMES BRADY, *vs.* THE CONSOLIDATED ·GAS COMPANY OF BALTIMORE CITY.

*Negligence—Escape of Gas Causing Death—Liability of Gas Company—Evidence.*

It is not *per se* negligence on the part of a gas company to leave a supply pipe in the cellar of a house where gas is no longer used, with a stop-cock shutting off the gas; and if the company has no notice of any defect or leak in the pipe, it is not negligence on its part not to make an examination of the premises.

In an action against a gas company to recover damages for a death alleged to have been caused by the escape of gas, the plaintiff's evidence was that he did not use gas in his house and there was no meter there, but that there was a supply pipe in the cellar on which was a stop-cock shutting off the gas, and this condition had existed for five years without any leak; that coal was piled by the plaintiff over and against the pipe; that on returning to his house one afternoon plaintiff perceived a strong odor of gas and found his daughter lying on the floor of the cellar, dead. The medical evidence was that she had been dead for some hours when found, but there was no evidence showing that she was killed by inhaling gas. There was then a leak in the pipe, but there was no evidence to indicate how this was caused. *Held*, that since the plaintiff had failed to prove that the deceased came to her death by inhaling gas and also that the escape of gas was caused by defendant's negligence, the jury was properly instructed that their verdict must be for the defendant.

In the above case evidence that a stop-cock on a supply pipe is a dangerous method of shutting off gas is not admissible, when there is no evidence in the case showing that the condition of the stop-cock had anything to do with the escape of gas.

And evidence that it would be safer to put a cap on the pipe instead of a stop-cock, or that it would be safer to turn the gas off in the street is inadmissible.

In an action for the negligent escape of gas, a witness cannot be asked if he would regard it as negligence on the part of the company not to make an examination of the pipes in a house where gas is not used for five years, because that is a matter of law. Nor can a witness be asked his opinion upon a state of facts that according to his own testimony did not exist.

Appeal from the Court of Common Pleas (WRIGHT, J). The second and following exceptions were taken to the refusal of the trial Court to allow certain questions to be asked by the plaintiff of his witnesses. In the second exception the question was: " Would you say, if there was a stop-cock either on top of the riser or on some other portion of the supply pipe, either one of these would be a dangerous method ?"

In the third exception the question was : " In the ordinary case of a feed pipe going through a wall, with an L joint and a ' riser ' about two and a-half or three feet long, where there was no meter in the house, would it be safer to put a cap on than a stop-cock ?"

In the fourth exception the question was : " State whether or not in your opinion it is practicable and feasible to adopt the system of turning off the gas at the street or curbstone. "

In the fifth exception the question was : " If it was shown to you that a party having control of pipes, or controlling pipes, had not made an examination of them for a period of five years, would you regard such failure to make an examination of those pipes as negligence on the part of such parties ?"

In the sixth exception the question was : " Suppose there was a defect of that sort, a defect below the screw, and you applied your wrench, and, in point of fact, it didn't have the effect of breaking the pipe off, but you screwed it out ; could you then, by the mere application of the eye, determine whether such a defect as that existed—the kind testified to ?"

The deceased, Marian Brady, was twenty-four years old. At the conclusion of the plaintiff's testimony the trial Court instructed the jury that that evidence was insufficient to show that the death of Miss Brady resulted from the negligence of the defendant.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, BOYD and RUSSUM, JJ.

*Thomas E. Brady* (with whom was *Charles Morris Howard*), for the appellant.

The Court declined to hear *William A. Fisher, J. Alexander Preston* or *Robert Ludlow Preston*, for the appellee.

RUSSUM, J., delivered the opinion of the Court.

This suit was brought by James Brady in the name of the *State for his use* v. *Consolidated Gas Company of Baltimore City*, to recover for the death of his daughter, Marian Brady, alleged to have been caused by the negligence of the defendants.

The defendant, at the time of the accident complained of, was engaged in the manufacture and supply of illuminating gas in Baltimore City. The declaration contains two counts, the first of which charges that Marian Brady, while employed in her household duties and using due care and diligence, " *died from inhaling the gas,* which the defendant wrongfully and negligently permitted to escape in and upon the premises of the equitable plaintiff;" and the second count, after setting out that the defendant was engaged in the manufacture and supply of illuminating gas, " an article dangerous to property and deadly in its effects on human life," negligently permitted the same to flow through " rotten, decayed and otherwise dangerous pipes " into and filled the premises of the equitable plaintiff," and the said Marian Brady while occupied in rendering services to plaintiff, as his housekeeper, and using his premises with due care and diligence, was overcome and " *died from inhaling the said gas.*"

With the declaration there was filed a statement of the particulars of the claim, and the ground upon which it was made, as follows : " Marian Brady was found dead in the cellar of house No. 619 East Chase street, on October 11th, 1893, having died from the effects of inhaling gas with which the premises were filled from pipes belonging to the defendant. The equitable plaintiff is the father of said Marian Brady."

·· ·The· case was· tried upon the general issue that the de-
fendant did not commit the wrong alleged, and under the
instructions of the Court the verdict was for the defendant.

The evidence shows that on the morning of October 11th,
1893, about 7 o'clock, the equitable plaintiff left his house,
No. 619 East Chase street, where he resided with his daugh-
ter, Marian Brady, to go to his work.   When he returned
at 5 o'clock in the afternoon he found Mrs. Braden, Miss
Braden and Miss Basson at the house, and the smell of gas
very strong.   Not finding his daughter he went to the cel-
lar, where he heard the gas escaping through the pipe with
a hissing noise, apparently under the coal, and strong enough
to make any one sick if he remained there any time, and
his daughter lying on her back, her body stiff and cold and
her feet ten feet from the gas pipe.   The gas pipe had been
in the cellar during the whole time he resided there, about
five years, but there was no meter there, as he had not been
using gas.   The supply pipe entered the cellar from the
street, about one foot above the cellar floor, and the depth
(or pitch) of the cellar was about seven feet.   The upright
pipe or "riser" was screwed into the pipe entering from
the street, and stood without being supported by the wall.
The cellar was about fourteen feet wide by fifteen in length.
The coal bin was located at the point at which the gas pipe
was situated, and the equitable plaintiff had been in the
habit, during his occupancy of the house, of having coal
dumped into it through a chute, and a short time before the
death of Miss Brady four tons of coal had been put in there;
it had fallen around the pipe, and the equitable plaintiff had
himself shoveled part of it against the pipe.   The coal was
piled up as high as the cellar window and around the up-
right pipe, which projected about six or seven inches above
the coal.   The odor of gas became very perceptible and
oppressive between 10 and 11 o'clock, but before that time
had not been noticed by the neighbors.   Dr. Brinton was
sent for and found Miss Brady lying in the cellar dead.  She
had been dead sometime, as *rigor mortis* was very marked,

which usually does not happen until three or four hours after death. He could not say from what cause she died, unless he had been in charge of the case before death.

At the conclusion of the plaintiff's case, the Court below was asked by the defendant to instruct the jury that " even if all the evidence offered by the plaintiff can be regarded as correct, nevertheless none had been offered sufficient to show that the death of Miss Marian Brady resulted from the negligence of the defendant, its officers or agents, and the verdict must be for the defendant." This ruling constituted the first exception, and in determining whether it be correct or not it becomes necessary to refer to the settled principles of law applicable to the case. All the cases agree that to constitute a good cause of action, there should be stated and proved a *right* on the part of the plaintiff, and a *duty* on the part of the defendant in respect to that right, and a breach of that duty by the defendant, *whereby* the alleged injury was produced. Between the negligence and the injury there must be the relation of cause and effect. *Maenner* v. *Carroll*, 46 Md. 212 ; *W. U. Tel. Co.* v. *State, use of Nelson*, 82 Md. 310 ; *Holly* v. *Boston Gas Light Company*, 8 Gray, 123 ; *Trainor's case*, 33 Md. 554.

If the evidence falls short of proving that the injury complained of was the direct result of the defendants' negligence; whenever it is so inconclusive that no well constituted mind can infer from it the fact which it is offered to establish, it becomes the duty of the Court, when requested, to instruct the jury that the evidence is insufficient to justify their finding the fact attempted to be proved. *Brinkley* v. *Platt*, 40 Md. 529 ; *Tyson* v. *Tyson*, 37 Md. 567 ; *Clark* v. *Dederick*, 31 Md. 148 ; *Plank Road* v. *Bruce*, 6 Md. 457.

Having these well-established legal principles in view, we now proceed to a consideration of the facts in proof, bearing in mind that the *onus* is on the plaintiff to show affirmatively all the elements of the right to recover. It was necessary for the plaintiff in this case to prove (1) the death of Miss Brady ; (2), the negligence of the defendant, and (3),

that such negligence was the cause of Miss Brady's death. We have been unable to discern any evidence in the record tending to prove that the escape of gas from the defendant's pipe, on the premises of the equitable plaintiff, was, in any respect, due to the negligence of the defendant. The equitable plaintiff had not used gas during the five years of his occupancy of the house, and there had, in that time, been no escape of it, even up to the time he left home on the morning of October 11th, 1893. The pipes were left on the premises, presumably by the consent of the owner of the building, and for the convenience of his tenants. The gas was shut off in the usual way, by a stop-cock in the "riser," which, according to the proof, answered the purpose effectually. Whether the leak, which was at the L, was caused by the fact that the pipe was defective when put in, or whether the break in it was caused by the rough and negligent manner in which it was treated by the equitable plaintiff, in dumping large quantities of coal against and around it, for four or five years in succession, are questions upon which the proof is entirely silent. It was not negligence on the part of the company to leave its pipes on the premises, nor does the fact that it made no examination of the pipes raise any presumption of negligence, in the absence of any notice of the existence of any cause for an examination. Had there been such notice its duty would have been to have discovered the cause of the leak, and to have used proper means to remedy it. It was not required to keep up a constant inspection all along its lines, without reference to the existence or non-existence of a probable cause for the occurrence of leaks, or escape of gas. *Consolidated Gas Company* v. *Crocker*, 82 Md. 124.

This is not a case in which negligence may be inferred from the occurrence of the injury, as has been so earnestly argued by counsel for the appellant. It differs from the cases cited by them in the fact that, in each of them, there was evidence of an act of negligence, as, for instance, in *Worthington's case*, 21 Md. 275, the accident was caused

by a misplaced switch, due to negligence in the construction
of the defendant's railroad track ; and in *Mahone's case,* 63
Md. 135, where a person who had bought a ticket was in-
vited to cross the track in front of an approaching train,
by the defendant's agent; and in *Kaskell's case,* 78 Md.
517, where an overcrowded street car, off the track, was
driven two squares over cobble-stones, without an effort to
replace it, until it collided with a freight car on an adjoining
track, injuring the plaintiff.   In this case there is no proof
of any act or omission on the part of the defendant, to
which the escape of gas may be fairly attributed.   Nor have
we been able to find any proof in the record that the death
of Miss Marian Brady was *caused by inhaling gas.*   So far
as the record discloses, the evidence is so vague and uncer-
tain that the death might, with equal reason, be attributed
to some sudden and natural cause.   Dr. Brinton, who was
familiar with the circumstances surrounding her death, and
who examined her body, was unable to say from what cause
she died ; and yet we are asked to say that it was proper to
have allowed the jury to speculate—to guess—that she met
her death by inhaling gas.   The proof of the fact that Miss
Brady's death was caused by inhaling gas, which had per-
meated the dwelling of the equitable plaintiff, through the
negligence of the defendant, was essential to recovery.

But it is insisted that occular or other direct testimony of
the details and precise manner of the accident are not essen-
tial parts of the proof in this case, because the doctrine of
*res ipsa loquitur* applies, and many cases are cited in support
of this theory.   It is a sufficient answer to this proposition
to say that, whilst it is true that whether this doctrine ap-
plies becomes a question of common sense, there can be no
common sense in its application to any case *unless the
accident is connected with the defendant.*   In the cases cited
in support of this contention there was no doubt as to the
proximate cause of the injury.   In this case, as we have
seen, there is not a particle of proof to connect the defen-
dant with the escape of the gas, nor is there any that the

death of Miss Brady was caused by inhaling gas. If the cause of her death was known there might be some reason for the inference of negligence, but we cannot infer that she died from inhaling gas, and then, build on that the second inference, that the escape of the gas was due to the defendant's negligence. There being no proof to show what was the immediate cause of the death of Miss Brady, and that it could not have happened in any other way than by reason of the defendant's negligence, the doctrine of *res ipsa loquitur* is not applicable to this case. It follows from what we have said that the Court below was right in instructing the jury that their verdict must be for the defendant.

In the course of the trial William Ferguson, a witness for the plaintiff, was asked whether a "stop-cock," on the top of the "riser," or on some other portion of the supply-pipe, would be a dangerous method of shutting off the gas, which was objected to by counsel for defendant and sustained by the Court, and this constitutes the second exception. We see no error in this ruling. There was no pretence that the stop-cock had anything to do with the escape of gas. It was calculated to mislead the jury and was properly rejected.

The Court below also properly refused to permit the witness to answer the questions in the 3rd and 4th bills of exception. Whether some other plan than the one adopted by the defendant would be safer, or not, was not the question before the jury. There was no question before the jury as to the efficiency of the plan adopted by the company to shut off the gas, and all such questions were irrelevant and misleading. The only obligation on the company was to use a safe plan, which appears to have been done. *Wood, Receiver,* v. *Heiges,* 83 Md. 253; *Crowthers case,* 63 Md. 569.

The question propounded to the witness, McConnell, which constitutes the 5th exception, was also properly rejected. The question of negligence *vel non* is either a question of law or one for the jury. This question proposes to

substitute the opinion of a witness upon a matter of law, for that of the Judge, whose province it is to pass on all such questions.    It assumes, as a matter of law, that regardless of all other facts in the case, there was an obligation on the part of the defendant to have made an examination, and makes the opinion of the witness take the place of the jury upon the very question it has been empannelled to decide. The question propounded to the same witness, which constitutes the 6th exception, was also properly rejected. Whether or not the appellee had the means of determining defects was not a question in the case, since there was no evidence of such a state of facts as to impose on it the duty of an inspection.    Besides, it proposes that the witness shall express an opinion on a state of facts that, according to his previously expressed opinion, could not exist.

*Judgment affirmed with costs above and below.*