FRANCES DECOLA *vs.* JOHN COWAN ET AL.

*Fall of Brick from House—Prima Facie Evidence of Negligence—Independent Contractor.*

While plaintiff was walking alongside of a house in the course of erection, and where bricklayers were at work, she was struck on the top of the head by a hard substance and rendered unconscious. An eye witness testified that he saw a brick fall from above and strike the plaintiff, although he did not see the brick when its flight began. *Held*, that this evidence is legally sufficient to prove that plaintiff was injured by a brick falling from a wall in the course of erection, and is *prima facie* evidence of negligence on the part of the workmen there engaged.

In an action against the builder of a house and a bricklayer employed by him to recover for an injury caused by a fall of a brick from the house on the plaintiff, the evidence was conflicting as to whether or not the bricklayer was an independent contractor, having complete control of the laying of the bricks, and hence raised a question of fact for the determination of the jury.

Appeal from the Superior Court of Baltimore City (WRIGHT, J.)

The cause was argued before McSHERRY, C. J.; BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*R. R. Boarman* (with whom was *J. J. Lindsay* on the brief), for the appellant.

*Carroll T. Bond*, for Cowan, appellee.

*Thos. Ireland Elliott* (with whom was *Charles F. Stein* on the brief), for Berndt, appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellant sued the appellees in the Superior Court of Baltimore City to recover damages for an injury claimed to have been caused by a brick falling upon her from a house in course of erection as she was walking on the pavement in front of it. The case was taken from the jury by the Court below by granting the prayers to that effect, offered at the close of the plaintiff's testimony, by the defendants, Cowan and Berndt.

The North Baltimore Construction Co. of Baltimore City was originally included among the defendants as the owner of the house from which the brick is alleged to have fallen, and that company appeared to the action and filed a plea of *non cul.*, on which issue was joined, but no further notice is taken of it in the record or on the briefs. As there was no evidence tending to make that company liable for the injury complained of, we assume that the suit as to it was abandoned.

The amended declaration, on which the case was tried below, alleges that, while the three defendants were together engaged in erecting the building in question, the plaintiff was passing along the sidewalk in front of it using due care and caution when "a brick or large substance fell or was thrown from the building, being so erected as aforesaid by said defendants, by the carelessness and want of due care of the said defendants, their servants and agents," and struck her on the head and seriously injured her.

There is evidence in the record tending to show the following facts. In the year 1901 the defendant Cowan, who was a carpenter and builder, was engaged in erecting a four-story brick apartment house, on a lot of ground at or near the northwest corner of North and Maryland Avenues in Baltimore City, under an independent contract with the owner of the lot. Cowan furnished all bricks and mortar required for the build-

ing and employed his co-defendant Berndt to lay the bricks at a fixed rate per thousand and Berndt employed such additional bricklayers as were requisite to enable him to do the work. Cowan testified that he .paid Berndt the stipulated price per thousand for laying the bricks and that Berndt paid the bricklayers who did the work and that he (Cowan) had nothing to do with the laying of the bricks other than to see that they were properly laid. Goucher Tase who was employed by Cowan as "foreman of the job" of erecting the building and had charge of the job testified that he gave directions about the height, thickness, &c., of the walls to Berndt when he was there and to his foreman when he was not there, but that Berndt directed the bricklayers "as to the manner of doing their work, in the manner of laying bricks." Tase further testified that he had often seen Berndt pay the bricklayers but that he had also on one or more occasions seen Cowan pay them.

In the latter part of August, 1901, when the walls of the building had reached about the third story, while the plaintiff and her daughter were walking on the sidewalk of Maryland Avenue in front of the south end of the building something fell upon the head of the mother with such violence that it fractured her skull and inflicted serious injury upon her. She was rendered unconscious by the blow and, could give no account of the details of the accident. Oscar E. Ross, who happened at that time to be sitting on a porch on the opposite side of the street testified, "I saw her hit on the head with a brick. I do not know where it came from, it came out of the air some place in the neighborhood it was close to that building. I could not see it come off that wall, but I saw her walking along the pavement on the side of that wall, I could not say that I saw the brick come down, but I saw the brick at the time it hit her and I also saw the brick picked up by somebody. As far as I could see I am almost positive that it was a brick that hit her." He further said that he had been sitting on the porch looking at the workmen laying brick on the wall and after the accident he noticed that they went to the other end of the building.

Rosie Decola, the daughter, testified that as they were walking along the pavement within two or three feet of the wall she heard a brick fall and turned around and saw her mother lying on the ground with a brick alongside of her. The brick and the mother's head were both bloody and there was blood on the ground. Tase, the foreman of the defendant Cowan, also testified that he was on the street at the northeast corner of the building when the accident occurred and had his attention called to it by the cry of the injured woman, and that just before the accident there were bricklayers working on the front wall but that he did not notice them at the time of the accident. There was also the testimony of several physicians touching the nature and extent of the plaintiff's injury.

With this evidence before it the Court below erred in taking the case from the jury. The fact of the accident and the resulting injury to the plaintiff were clearly proven. There was also evidence from which the jury, if they believed it, might have found that she was injured by a brick falllng from the wall which was being erected under the management of the defendants or their servants. It is true no brick was followed by an eye witness in its flight from the wall down to the head of the plaintiff who was passing underneath it; but she was struck on the top of the head and the witness Ross testified that he saw the brick when it struck her. Her daughter, who was walking by her side, testified that she heard her mother struck and saw the bloody brick lying by her head on the pavement after she fell down. Bricks when handled with due care in constructing a wall do not ordinarily fall to the ground. The erection of walls of brick houses abutting on the sidewalks of public streets is constantly in progress in every city and large town. As was said by the Court in *Scott v. London Dock Co.*, 3 H. & C. 696, "Where the thing is shown to be under the managemet of the defendant or his servants. and the accident is such as, in the ordinary course of things, does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from

want of care." In *Byrne* v. *Boadle*, 2 H. & C. 722, a barrel of flour fell from an upper window of the defendant's warehouse and injured the plaintiff who was passing on the public street in front of it. A witness saw the plaintiff struck upon the shoulder by the barrel but did not see it until it struck him. Another witness testified, "I saw a barrel falling, I don't know how, but from defendant's." The evidence was held to be sufficient to go to the jury, the Court, POLLOCK, C. B., saying, at p. 727. "Suppose in this case the barrel had rolled out of the warehouse and fallen on the plaintiff how could he ascertain from what cause it occurred? It is the duty of persons who keep barrels in a warehouse to take care that they do not roll out, and I think that such a case would, beyond all doubt, afford *prima facie* evidence of negligence. A barrel could not roll out of a warehouse without some negligence, and to say that a plaintiff who is injured by it must call witnesses from the warehouse to prove negligence seems to me preposterous. So in the building or repairing a house or putting pots on the chimneys, if a person passing along the road is injured by something falling on him, I think the accident alone would be *prima facie* evidence of negligence." In the present case the evidence, to which we have already alluded was sufficient to call upon the defendants for an explanation of the falling of the brick.

The question next presents itself whether there was any evidence legally sufficient to go to the jury to hold the defendant, Cowan, who contracted to erect the whole building and employed Berndt to lay the bricks, liable for the accident. In *Bonaparte* v. *Wiseman*, 89 Md. 21, we said "The question of the extent to which the employment of an independent contractor, to do work which is placed entirely under his control, will relieve the employer from liability for injuries resulting to third persons has been much discussed by the Courts. The general principle broadly stated is that when the work is done by a competent contractor under an agreement which gives him complete control of the work and of the persons employed by him to do it, such persons will be his servants and

not those of the employer, and the latter will not be liable for injuries caused by the negligence of the workmen because they are not his servants and are not under his control." In *Deford* v. *State, use of Keyser,* 30 Md. 179, our predecessors carefully considered the authorities bearing upon the subject of the liability of the employer of a contractor for injuries resulting from the negligence of the latter's servants. It is there said in the Court's opinion: "The greatest difficulty however in these cases is in determining upon the facts who is to be regarded as the master of the wrongdoer. This of course depends mainly upon the terms and character of the contract of employment. * * * The terms and manner of employment were, of course, matters of fact for the jury; it being for the Court to declare the legal relation that existed between the parties upon any given state of facts."

The evidence in the present case as to the terms and character of the contract of employment of Berndt by Cowan is so conflicting as to present a material issue of fact. No written or verbal contract was proven definitely giving to Berndt complete control of the erection of the walls of the building and of the persons employed by him to do the bricklaying. Berndt himself was not called to the stand and Cowan's testimony on that subject was "I had bricklayers to build the walls, Mr. Berndt employed the bricklayers, I employed him to do that work and he employed the bricklayers. I do not know whether there was a written contract or not, mostly we get estimates from a bricklayer or sub-contractor, we seldom make a written contract such as this you have submitted here a while ago" (referring to his own contract to erect the building) "we take his estimate" * * * "The estimate would state that he would lay the bricks for so much per thousand, this is a contract." He further testified, as we have already said, that Berndt controlled the manner and method of laying the bricks, and he (the witness) had nothing to do with laying them except to see that they were properly laid. This evidence, taken in connection with that of Cowman's foreman, Tase, presents the question of fact for the jury whether Cowan

in employing Berndt to lay the bricks gave him complete control of the erection of the walls of the building and of the persons employed by him to do the bricklaying.

The defendants should have been required to proceed with their testimony, if they had any which they desired to submit, and the case should then have been given to the jury with proper instructions as to the law governing it, upon a specified state of facts to be found by them.

The judgment for the defendants will be reversed and the case remanded for a new trial.

*Judgment reversed with costs and case remanded for a new trial.*

(Decided January 9th, 1906.)