# THE CHESAPEAKE AND POTOMAC TELEPHONE COMPANY

*vs.*

## HARRY G. MILLER.

*Negligence—Telephone Wire in Road—Res Ipsa Loquitur.*

In an action for personal injuries received by plaintiff as a result of the collision of his automobile with a telephone pole belonging to defendant, there being testimony that there was nothing in plaintiff's management of the car, nor any defect in the car, to account for its leaving the road, and there being also testimony that after the accident the car was found with a wire wrapped around the right front wheel, which wire led up to the pole, and that the track of the car ran straight back from the pole to the macadam part of the road, it was possible for the jury, without mere speculation, to find that the steering of the car away from the pole was prevented by such a wire, and it was proper to refuse to direct a verdict for defendant by reason of a lack of evidence as to what caused the accident.

pp. 649-651

It was proper also to refuse to direct a verdict for defendant for lack of evidence that defendant actually knew of any defect in the condition of its wires, or that such defect had continued long enough for defendant to have had opportunity to discover it, there being testimony that several weeks before the accident, and also not long before it, a cross arm on the pole had been observed to be broken.                pp. 647, 653

*Decided January 9th, 1924.*

Appeal from the Circuit Court for Washington County (WAGAMAN, J.).

Action by Harry G. Miller against the Chesapeake and Potomac Telephone Company of Baltimore City. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Shirley Carter*, with whom were *Bernard Carter & Sons* on the brief, for the appellant.

*Frank A. Perdew* and *J. Lloyd Harshman*, for the appellee.

ADKINS, J., delivered the opinion of the Court.

Harry G. Miller, appellee, sued the Chesapeake and Potomac Telephone Company of Baltimore City, appellant, for personal injuries resulting from a collision between appellee's automobile and one of the poles of appellant. He and his wife were riding in a five-passenger Buick, with chains on the wheels, from Cumberland towards Hagerstown on the afternoon of November 27th, 1921, on the Baltimore Turnpike Road. The accident occurred at a point about three miles east of the town of Hancock, a little after five o'clock P. M.

According to the testimony of Miller and his wife, it was between daylight and darkness. It had been raining some all day, but they had had no trouble at all. The lights of the car were turned on and they could see the roadbed very well. Just before the accident Mrs. Miller called the attention of her husband to the fact that he was running fifteen miles an hour and it was fifteen minutes after five; she said: "'Now you are coming to a curve,' and I kind of pulled the right front wheel on the dirt surface, for she had asked me to do that all the way down on account of the wet weather; and sometimes you slip; and we pulled out as I had been doing all that day and I going around there just at the same speed I had been running all day—never run over fifteen or twenty miles an hour; twenty my regular speed on good road and not so fast around curves; but all of a sudden, about the time I got in sight of the curve, or close to the curve, all of a sudden something seemed to break off of my steering part of the car.

I gave a couple of hard pulls on the wheel and my wife looked up in my face and said, 'What is the matter with the car?' I don't remember making her any answer, but I kept on using all my strength to the left side, the way I wanted to go, and my car went right straight for this pole; I was going on the dirt surface, but when I came to where I wanted to turn I couldn't turn the car at all. The car went as straight for that pole as if shot out of a gun. I saw the pole before I hit it and I saw I was going to face death. I was sure I was going to be killed. I couldn't get the car stopped because the time was too short and the distance was too short. I didn't have time to take in the situation and I didn't know what was going to happen."

The pole in question was off the travelled part of the road, twelve and a half feet from the edge of the macadam and about eight feet from the edge of the dirt shoulder, and two and a half feet below the level of the road.

There is no direct testimony in the record other than that referred to above, as to what caused the car to leave the road. The track of the car examined after the accident led straight from the macadam to the pole, and there was no appearance of skidding. The front part of the car was crushed, and the right rear wheel. Marks upon the pole indicated that it had been struck by one of the springs of the car. The front of the car was about three feet west of the pole. Several witnesses testified that wires ran under the car from the rear and front and one or more were lying on top; that a wire was wrapped around the right front wheel leading up to the pole, "next to the spokes on the inside"; that about three weeks before the accident they saw that the top cross arm on this pole was broken next to the first pin on the pole on the side next to the road and the arm was "dropped down at one end about three inches," and that they saw it in the same condition several times later, the last time not long before the accident. This end of the cross arm was found broken off just after the accident and, according to the testimony of these witnesses, part of the break appeared to be old. The

mechanics who moved the car after the accident testified there was nothing wrong with the steering gear. No one before the accident saw any wire on any part of the road. On the contrary, several of defendant's witnesses who rode by the place of the accident, an hour or so before it happened, said they saw no wire on the road. An employee of defendant, whose business it was to inspect the lines frequently, testified he did this three times a week; that he rode by this place one or two days before the accident, and saw nothing wrong with anything at or near the pole in question. If the cross arm was broken, as testified to by the plaintiff's witnesses, the witness apparently did not see it. At any rate there is nothing to show it was ever repaired. The testimony on behalf of defendant was that there was no wire in any way attached to the car, and the plaintiff himself and one or two of his witnesses who were investigating did not see any wire so attached. Defendant's testimony also tends to negative the idea that the alleged broken cross arm in any way contributed to the accident, but does not seem to us conclusive. At the close of the testimony, plaintiff offered three prayers, the first and third of which were granted. The second prayer, which sought to have the right of recovery based on the finding of the broken cross arm, in connection with other facts, was rejected.

Defendant offered eight prayers, of which the seventh and eighth were granted and the first six rejected. The seventh of defendant and first of plaintiff predicated the right of recovery upon the finding of negligence on the part of defendant in permitting its wires to become detached and to fall upon the road, and that one of said wires came in contact with plaintiff's automobile, thereby causing plaintiff to lose control of his car and causing it to run off the public highway and into the pole, without any negligence on the part of the plaintiff. Defendant's third prayer was the usual measure of damage prayer. Defendant's eighth prayer instructed the jury that they could not find that the defects, which plaintiff's witnesses testified existed in the top cross

arm of the pole, in any way contributed to the accident. Its first six prayers in varying forms asked for an instructed verdict in favor of defendant, on the following grounds, viz:

1.  Because there was no evidence under the pleadings legally sufficient to support a verdict for plaintiff.

2.  No evidence legally sufficient to prove that the accident resulted from any negligent act or negligent omission or wrongful act on the part of defendant.

3.  No evidence legally sufficient to show that the accident resulted from failure of defendant to perform any duty it owed plaintiff.

4.  No evidence legally sufficient from which the jury could find:

(a)  That there was any wire or wires in the travelled portion of the highway at the time plaintiff passed along said highway.

(b)  That said wire or wires caused the automobile to run off said road and down the bank.

5.  Adds to 4, that there was no evidence "that the defendant had actual notice that the said wire was in the travelled portion of the highway before the plaintiff passed along the same; or that the said wire had been there so long that the defendant had had a reasonable opportunity to discover and remove it."

6.  Covers 4 and 5 in another form.

Defendant specially excepted to all plaintiff's prayers, which exceptions were overruled. This appeal is from the judgment on a verdict in favor of plaintiff. The single bill of exception was to the adverse rulings of the court on the prayers and special exceptions.

We find no error in these rulings. Appellant relies upon the cases of *Balto. and Pot. R. R. Co.* v. *State, Use of Abbott,* 75 Md. 152, and *Benedick* v. *Potts,* 88 Md. 52, which he strongly contends are decisive of his proposition that plaintiff cannot recover because there is no evidence tending to prove what caused his car to leave the highway and run into the pole, and that in the absence of such evidence there can be

no presumption of negligence or omission of any duty owed by the defendant to the plaintiff.

But there is a material difference on this point between the facts proved in the cases cited and those testified to in the case at bar.

In the *Abbott* case, *supra,* a brakeman fell from an open freight car while the train was passing through a tunnel. Just before the train entered the tunnel he was seen standing up in the car. When the train emerged he was missing. On investigation he was found dead on the track. In the declaration filed in that case it was alleged that he was overcome by gases in the tunnel. But there was no evidence from which the jury could infer that his falling from the car was due to this cause rather than to his making a misstep or losing his hand or foot-hold in attempting to pass from one car to another.

In the *Benedick* case, *supra,* a passenger on a mimic railway fell from a car while it was passing through a tunnel and was afterwards found severely injured. There was no evidence tending to show how it happened. The car had two seats facing each other, with room for two passengers on each seat. He sat in the rear seat and two ladies who accompanied him occupied the front seat. The other members of his party got through safely, and there was nothing to show anything wrong with the mechanism or with the running of the mimic train. There was some evidence that a part of the board running down the centre of the tunnel roof had been slabbed off at one point, but there was nothing to indicate when that had happened. Commenting on that state of facts, it was said: "It is a case presenting not a single circumstance showing *how* or by what agency the injury occurred and in which, with nothing but the isolated fact of the injury having happened being proved, it is insisted that the jury shall be allowed to speculate as to the cause that produced it, and then to *infer* from the cause thus assumed but not established, that there was actionable negligence."

In the present case there is testimony tending to show that there was nothing in the conduct of plaintiff, and no defect in the car, to account for its leaving the road. There is also testimony that after the accident the car was found with a wire wrapped around the right front wheel and that this wire led up to the pole which was struck; and that the track of the car ran straight back to the macadam. If the jury believed plaintiff's testimony, and that of several witnesses on behalf of plaintiff, both the management and condition of the car were eliminated as factors in considering what caused the car to leave the travelled part of the road; and without mere speculation it was possible for them to find that the steering of the car away from the pole was prevented by the wire which was wrapped around the inside of the wheel. See *Western Union Tel. Co.* v. *State, Use of Nelson,* 82 Md. page 313.

Of course we are not dealing with the weight of the evidence.

However, it is further urged by defendant that, even if there was evidence legally sufficient to enable the jury to find this physical fact, the case should still have been withdrawn from the jury, because there was no evidence legally sufficient to prove that defendant had actual knowledge of any defect in the condition of its wires, or that such defect had continued long enough for defendant to have had opportunity to discover it.

And in this connection defendant contends that the doctrine of *res ipsa loquitur* does not apply to telephone companies, citing in support of the position *United Electric Light & Power Co.* v. *State, Use of Lusby,* 100 Md. 634.

In that case it was a wire of the Chesapeake and Potomac Telephone Company, falling upon a feed wire of the Electric Light and Power Company, and extending down to the street, which did the damage, and the telephone company was a joint defendant in the trial below, where there was an instructed verdict in its favor, apparently on the theory, contended for here by appellant, that the rule applicable to those having

wires highly charged with electricity does not apply to telephone companies whose wires are not dangerous by reason of high electric current. But no appeal having been taken by the plaintiff, this Court did not pass on the correctness of this ruling.

Nor does the language of JUDGE BRISCOE in that case, used in distinguishing it from the case of *Western Union Tel. Co.* v. *State, Use of Nelson*, 82 Md. 312, bear the construction given it by appellant; for he was speaking of the remaining defendant, which was not chargeable with negligence by reason of any defect in its own wire except want of proper insulation, which the evidence showed might well have been caused by the contact with the falling wire over which that defendant had no control. However, its duty would have been to remove this wire if there had been time for it to discover it; and the evidence was that the wire fell only a few minutes before the accident. It was in that connection that he referred to the want of opportunity to discover the dangerous condition.

As a matter of fact the specific question raised by appellant in this connection does not appear to have been decided by this Court. There are several cases where the rule was applied where highly charged wires were involved, as in the *Nelson* case, *supra*, and *Walter* v. *Baltimore Electric Co.*, 109 Md. 526. These cases cite with approval *Thomas* v. *Western Union Tel. Co.*, 100 Mass. 15, which applied the doctrine to an accident resulting from a telegraph wire surging across a highway, without qualification as to time.

The doctrine has also been applied by this Court to accidents caused by other instrumentalities apparently in the control of defendants, where the circumstances seemed to justify the shifting of the burden of proof. See *Howser* v. *Cumberland & P. R. R. Co.*, 80 Md. 153; *Decola* v. *Cowan*, 102 Md. 551; *Heim* v. *Roberts*, 135 Md. 605; *Pindell* v. *Rubenstein*, 139 Md. 567.

In the *Howser* and *Nelson* cases, *supra*, the following is quoted approvingly from the opinion of COCKBURN, C. J., in

the leading case of *Keaney* v. *The London &c. Railway Co.*, L. R. 5 Q. B. 411, viz:

"Where it is the duty of persons to do their best to keep premises or a structure in a proper condition, and we find it out of condition, and an accident happens therefrom, it is incumbent upon them to show that they used that reasonable care and diligence, which they were bound to use, and the absence of which, it seems to me, may fairly be presumed from the fact that there was the defect from which the accident has arisen."

In *Thompson on Negligence,* vol. 6, sec. 7649, it is said that many of the modern cases apply the rule of *res ipsa loquitur* as a rule of circumstantial evidence under appropriate conditions of fact, citing cases from many states, including two from this State, viz: *Winkelmann & Brown Drug Co.* v. *Colladay,* 88 Md. 78, and *Hearn* v. *Quillen,* 94 Md. 39.

In view of the testimony given by and on behalf of plaintiff, above referred to, including that in regard to the defective cross arm, which several witnesses said they saw several weeks before the accident, we are unable to say that the case should have been withdrawn from the jury because of insufficient notice to the defendant. In this connection, we are unable to reach the conclusion arrived at by the trial court, and embodied in defendant's eighth prayer, and say as a matter of law that the alleged defects in the cross arm in no way contributed to the accident.

*Judgment affirmed, with costs to appellee.*