## VICTOR FRENKIL *v.* J. ALEXANDER JOHNSON
[No. 61, October Term, 1938.]

594

*Decided January 10th, 1939.*

596

[redacted]

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Walter L. Clark* and *Roszel C. Thomsen,* with whom were *Clater W. Smith* and *Morris Rosenberg* on the brief, for the appellant.

*Palmer R. Nickerson,* with whom were *Due & Nickerson* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The plaintiff was driving an automobile southward on St. Paul Street, in Baltimore, at about a quarter to nine o'clock on the morning of September 22nd, 1937. He was the first of a line of automobiles in the same lane of travel, which were stopped by a traffic signal light at the intersection of St. Paul Street with Lexington Street. The defendant was engaged at the time in the demolition and removal of an old building which was built to the inner street paving lines at the northwest intersection of the streets. Almost as quickly as the plaintiff's sedan stopped, an explosion took place within the remaining walls of the building. There was first a terrific noise and crash, and then a precipitation of debris which was hurled into St. Paul Street and beyond its eastern boundary line. Some of the flying glass and material was driven by the force of the explosion against and into the sedan, and inflicted slight cuts upon the plaintiff and damaged the automobile. For these injuries the plaintiff brought suit against the defendant, and recovered a judgment, from which this appeal is taken.

The defendant and his servants were in possession of the premises where the explosion occurred. The front part faced on Lexington Street and was a three-story brick

building with cellar, and a one-story brick building in the rear on St. Paul Street. The defendant had begun the work on September 13th, when the interior partitions and doors were removed, as were the windows of the second and third stories. The actual wrecking operations continued from the fourth day. The rear one-story portion of the building on St. Paul Street had been taken down to the level of the ground and the roof of the main building, which fronted on Lexington Street, had been removed at the time of the explosion on the ninth day of their labor. No scaffolding had been built. Five men and a foreman were the workers. The method employed was to work down from the top of the outer walls by prizing loose the bricks with an iron pinch-bar, and placing them on the floor where they were at work, so that later they could be shot down to the ground in a chute which had been built back of the building. As the mortar was broken and the bricks were prized, masses of bricks, about a foot square, to the number of from 18 to 20, would occasionally fall outside and drop a distance of some 40 feet to the cement pavement on St. Paul Street, within the section of the sidewalk which had been roped off to prevent its use by pedestrians. Some 28 inches below the surface of the pavement where these blocks of bricks, after dropping, struck the sidewalk, two service pipes, of 1½ inches in diameter and about 15 feet apart, led from a 6 or 8 inch main, which ran north and south, under the St. Paul Street pavement, at the same depth as the service pipes and 15 feet distant from the eastern wall of the building. From this main and through the service pipes illuminating gas was delivered, through meters to the occupants of the building.

The men employed in razing the building would work at the top of the building and throughout the premises wherever and whenever there was occasion for them to go in tearing down the walls, cleaning and piling on the ground the bricks and other material, and doing whatever else was necessary in the performance of their jobs. There is testimony tending to show that servants of the

defendant detected the escape of illuminating gas on the premises when the work of razing was begun, and reported the condition to their employer several times before the gas company sent a man to investigate. He removed the gas meters, and plugged the service pipes at their openings in the cellar and left. Nothing else was done by the gas company, but gas continued to enter the building in the cellar, and to spread throughout the structure, and its presence in the building was made known to the defendant by its odor, which was smelled by his servants while they were engaged in the gradual demolition of the building. The explosive quality of illuminating gas and its effect upon consciousness and life are generally known. The windows and doors of the cellar and first floor of the building had not been removed. All that was necessary for an explosion was a lighted match, cigarette, or cigar, carelessly dropped or thrown where gas was confined. Even a spark from a casually struck piece of brick, stone, or metal, or from an electric wire, would have been sufficient. These perils are familiar, but there is testimony tending to show that the defendant ignored them, and neither investigated the cause nor made any effort to abate the constant danger which was present until it culminated in the explosion.

At the time of the accident, five of the workmen were on the third floor and the sixth was on the first floor, but it does not appear what he was doing there. He was knocked down, his clothing set on fire, and he was burned. The glass of the windows on the first floor was shattered and scattered, and this workman went out through one of the windows on St. Paul Street. The testimony was to the effect that the gas did not escape by any defect in the closing of the ends of the two service pipes, but entered the cellar through the stone foundation wall along St. Paul Street on either side of a service pipe. After the explosion the gas was escaping from a large leak in one of the old, corroded, service pipes, near its connection with the gas main, and, also, from an apparently new, longitudinal break in the main. The points of escape were about fifteen feet distant from the cellar wall.

The gas company was not shown to be negligent in its removal of the meters, but its alleged default was in the care and maintenance of its gas pipes and main under the public way, some fifteen feet outside the building line. See *Brady v. Consolidated Gas Co.,* 85 Md. 637, 642, 37 A. 263. If there be neglect of the gas company in the escape of the gas, which found its way into the cellar of the building, the conduct of the defendant, after the gas was discovered to be flowing into the building, if negligent, and such negligence should be, either independently or jointly in union with that of the gas company, the proximate cause of an injury to a third person, in the exercise of due care, the defendant would be liable to the third party in an action of tort.

Within certain limitations the general principle of law is that one must use his own rights and property so as to do no injury to those of others. *West Virginia Central & P. R. Co. v. Fuller,* 96 Md. 652, 667-669, 54 A. 669; *Scott v. Bay,* 3 Md. 431, 446; *Baltimore & P. R. Co. v. Reaney,* 42 Md. 117, 130; *Green v. Shoemaker & Co.,* 111 Md. 69, 73 A. 688; *Bonaparte v. Wiseman,* 89 Md. 12, 22, 42 A. 918. Thus the occupier of premises is under the duty not to injure the travelers upon the public streets adjacent to the premises, and if, during such occupancy, and because of the negligence of the occupier, an explosion occurs on the premises, and thereby debris of the building occupied is driven into the public street and, in the use of the highway, a person and the automobile, in which he is traveling thereon in the exercise of reasonable care and diligence, are struck and injured by such debris, the occupier is liable for such injuries. *Havre de Grace v. Fletcher,* 112 Md. 562, 569, 570, 77 A. 114; *Weilbacher v. Putts Co.,* 123 Md. 249, 255, 91 A. 343; *Pindell v. Rubenstein,* 139 Md. 567, 578-581, 115 A. 859; *Ver-Vac Bottling Co. v. Hinson,* 147 Md. 267, 272, 273, 128 A. 48. See *Baltimore Breweries' Co. v. Ranstead,* 78 Md. 501, 508, 509, 28 A. 273; *Philadelphia, B. & W. R. Co. v. Mitchell,* 107 Md. 600, 605, 69 A. 422; *Annapolis Gas & Electric Light Co. v. Fredericks,* 112 Md. 449, 77 A. 53. Should,

however, the explosion be of illuminating artificial gas which had invaded the premises through the neglect or unauthorized interference of a third person, so that what was otherwise safe became dangerous, the occupier is not liable until he knew or, in the exercise of reasonable prudence and diligence, should have known, of the altered and dangerous condition, and continues it after such knowledge is so acquired or imputed. *Halsbury's Laws of England* (2nd Ed.) vol. 23, pp. 621, 622; *Restatement of the Law of Torts,* vol. 2, sec. 364 (c), p. 987, sec. 368, p. 996; *Cooley on Torts* (3rd Ed.), pp. 123, 124; *Hunt v. Lowell Gas Light Co.,* 1 Allen, Mass. 343; *Bartlett v. Boston Gas Light Co.,* 117 Mass. 533, 538; *Pollock on Torts,* (8th Ed.) 437-439; *Clifford v. Atlantic Cotton Mills,* 146 Mass. 47, 15 N. E. 84. And see generally, for valuable annotations, 25 *A. L. R.* 262-304; 47 *A. L. R.* 488-494; 90 *A. L. R.* 1082-1108.

Hence, after the occupier or possessor knows or should know of the danger of the artificial condition of the premises to others outside the land, and fails to exercise reasonable care and diligence to make the condition reasonably safe, either by removing the danger, or by giving adequate warning, or by using other effective safeguards, the occupant or possessor becomes liable to persons outside the land for injuries which are the proximate result of such artificial conditions. *Supra;* and see *Consolidated Gas Co. v. Crocker,* 82 Md. 113, 122, 123-125, 33 A. 423; *Brady v. Consolidated Gas Co.,* 85 Md. 637, 642-644, 37 A. 263; *Consolidated Gas Co. v. Connor,* 114 Md. 140, 151, 152, 78 A. 725; *Chesapeake & Pot. Tel. Co. v. Miller,* 144 Md. 645, 652, 125 A. 436; *Tri-State Engineering Co. v. Graham,* 158 Md. 328, 331, 332, 148 A. 439; *Baltimore Asphalt Block, etc. Co. v. Klopper,* 152 Md. 529, 532, 533, 137 A. 347; *Burke v. Baltimore City,* 127 Md. 554, 561, 562, 96 A. 693; *Pollock on Torts* (8th Ed.) pp. 515-520; *Elliott on Roads and Streets* (3rd Ed.) secs. 905-910.

There is testimony on this record from which the jury could find that the gas meters were removed on September 16th, and that from that date until the explosion on

September 22nd the defendant knew that free gas continued to flow into the building. Furthermore, after its removal of the meters and closing the interior ends of the service pipes, the gas company was not informed that the escape of gas into the building was not stopped, nor did the defendant take any action to prevent the danger. Nor did the defendant discontinue his tearing down of the building, but persisted in his work without precautionary measures. The perils of explosion and fire from the accumulation of free illuminating gas in the building under demolition were obvious and known to the defendant for such a length of time as to make it a question for the jury whether the defendant, after he knew of the dangerous condition of the premises to others without the land, had not failed to use reasonable care and diligence to prevent injuries by explosion to travelers upon the adjoining public streets. The fact that, after the explosion, the source of the flow of the gas into the cellar was ascertained within a few hours, and the escape of the gas immediately and completely stopped, is sufficient testimony to carry to the jury the decision of the question of whether the defendant had adequate time in which to act before the explosion to make the premises reasonably safe for travelers in the normal use of the contiguous streets. *Consolidated Gas Co. v. Getty,* 96 Md. 683, 685, 686, 54 A. 660; *Consolidated Gas Co. v. Connor,* 114 Md. 140, 151, 152, 78 A. 725; *Mose v. Hastings Gas Co.,* 4 Fost. & F. 324, 176 Eng. Reprint 584. See *Consolidated Gas Co. v. Crocker,* 82 Md. 113, 123-125, 33 A. 423; *Brady v. Consolidated Gas Co.,* 85 Md. 637, 642, 37 A. 263.

If the jury should find the facts as stated, the defendant kept on the premises a dangerous condition and perilous to travelers in the heart of a populous city at the intersection of much used municipal streets. The potential dangers of the maintenance of such a condition were at the risk of the defendant, and not of the traveler upon the public street in its rightful use, without any reason to anticipate danger from an explosion within a

dismantled building. Should injury befall the traveler because of the realization of the potential danger, it is sufficient for the traveler's recovery to establish the existence and nature of the dangerous situation and that his injury was the direct and natural consequence and development of the negligence of defendant in maintaining such a condition. Such testimony would establish that the injury had been inflicted during the period of defendant's negligence and as a consequence of its inherently dangerous existence. The breach of duty owed by the defendant to the traveler on the highway was the former's failure to use the premises of which he was then in the exclusive possession with that degree of care and diligence which an ordinarily prudent man would, under similar conditions, have reasonably exercised, so as to prevent the dangerous state of the premises to become the proximate cause of injury to a traveler in the lawful and careful use of an adjacent municipal highway.

Although the dangerous condition of the premises in the possession of the defendant was created by the escape of gas from the mains and service pipes of the gas company without the defendant's consent, the proximate cause of the accident, so far as the defendant is concerned, was the presence on the premises of the free gas, because of the failure of the defendant to take reasonable care to make the condition reasonably safe after he knew of it. If the gas had not been there the explosion could not have occurred. *Consolidated Gas Co. v. Getty*, 96 Md. 683, 690, 54 A. 660. Thus, it becomes immaterial for the plaintiff to prove the particular manner whereby the free illuminating gas exploded. In any aspect of the proof, the proximate and efficient cause of the explosion was the presence of free gas. If the particular act or thing which set off the explosion was an act or condition for which either the defendant, through his servants, or a third party, was responsible, it would necessarily be an additional act or omission of the defendant or one of the third party, without legal

significance so far as the plaintiff's right of recovery is affected, since the injury was inflicted while the defendant's own wrongful act was continuing in force and operation. In the hypothesis made, if the ignition was by the act or nonfeasance of the defendant, the testimony would be unnecessary to establish the plaintiff's right of action; if, on the other hand, it was the act or omission of a third party, it would not affect the plaintiff's right of action against the defendant, whose negligence remained in existence to become concurrent. As observed in *Consolidated Gas Co. v. Getty*, 96 Md. 683, at page 690, 54 A. 660, at page 662: "But it is equally true that no wrongdoer ought to be allowed to apportion or qualify his own wrong; and that, as a loss has actually happened whilst his own wrongful act was in force and operation, he ought not to be permitted to set up as a defense, that there was a more immediate cause of the loss, if that cause was put into operation by his own wrongful act." *Baltimore & P. R. Co. v. Reaney*, 42 Md. 117, 136; *State v. Washington, B. & A. E. R. Co.*, 130 Md. 603, 611-613, 101 A. 546; *Wilson & Son v. Blaustein*, 144 Md. 289, 297, 298, 124 A. 886; *Brawner v. Hooper*, 151 Md. 579, 584, 135 A. 420; *Lange v. Affleck*, 160 Md. 695, 697, 155 A. 150; *Koplan v. Boston Gaslight Co.*, 177 Mass. 15, 58 N. E. 183, 188; *Consolidated Gas Co. v. Getty*, 96 Md. 683, 690, 691, 54 A. 660.

The testimony on this record does not afford any basis for a finding of fact as to the manner whereby the free illuminating gas in the building was exploded. The testimony on the part of the plaintiff and defendant removes all question that the gas was escaping from the company's gas pipes without the premises, and working its way into the building through its eastern cellar wall. The preceding statement of fact and of the rules of law show that there was legally sufficient evidence for the jury to find that the defendant was liable severally in tort, provided there was evidence to carry the question of the defendant's negligence to the jury. The action is brought in tort for the alleged negligence of the de-

fendant as the possessor or occupier of the premises in order to raze the building thereon. Consequently, the burden of proof is upon the plaintiff to show that the defendant was guilty of some breach of a duty owed by the defendant to plaintiff which was the natural and proximate cause of the injuries consequentially sustained by the plaintiff.

Negligence is not to be inferred from the simple fact of the happening of the injury. The facts and circumstances must tend to show that the injury was the proximate and natural result of some lack of care and diligence. The negligence may be established by direct or circumstantial evidence. *Burke v. Baltimore City,* 127 Md. 554, 562, 96 A. 693. Where the thing or artificial condition which is the proximate and natural cause of the injury is wholly in the possession and control of the one party or the other, or if he has much greater opportunity to know the facts and ability to prove them, such a party is bound, at his peril, to produce the proof of the facts which either he alone can prove or has the much better chance to know and power to prove. *Bohlen, Studies in Law of Torts,* p. 350 n. 4. In further extension of this principle, the rule is that when the plaintiff, in an action to recover for any injury inflicted by negligence, has offered legally sufficient evidence, in the absence of explanation by the defendant, to support the inference that the injury arose from want of care, if the thing or condition which inflicted the injury is shown to be under the management and control of the defendant or his servants, and that what caused the injury is such as, in the ordinary course of things, does not happen if those who have the management and control use proper care and diligence, defendant is *prima facie* guilty of negligence. *Carlin v. Smith,* 148 Md. 524, 531, 534, 535, 130 A. 340; *Singer Transfer Co. v. Buck Glass Co.,* 169 Md. 358, 361, 362, 181 A. 672; *Baltimore American Underwriters v. Beckley,* 173 Md. 202, 207, 208, 195 A. 550; *Prest-O-Lite Co. v. Skeel,* 182 Ind. 593, 106 N. E. 365; *Wigmore on Evidence* (2nd Ed.) sec. 2509.

This rule, which is commonly identified by the phrase *res ipsa loquitur,* is not applicable unless what inflicts the injury is shown to have directly and naturally been the result of some act or condition with which the defendant is connected and which ordinarily does not happen if those who have the control or management of the thing or condition exercise proper care. *Brady v. Consolidated Gas Co.,* 85 Md. 637, 643, 644, 37 A. 263. Nor is the rule applicable if it appears that the injury may have been caused by the independent negligence of the defendant or a third person, since, in such a situation, the plaintiff is not permitted to recover until he excludes the independent neglect of the third party as the efficient and proximate cause of the injury. Should, however, the cause of the injury be attributable to one or more things or acts for all of which the defendant was responsible, the plaintiff may recover without showing which particular one was the cause of the injury. *Wilson & Son v. Blaustein,* 144 Md. 289, 292, 293, 124 A. 886. Again, the rule does not apply if the defendant is not in exclusive control or management of the injurious agency. *State v. Blumenthal-Kahn Electric Co.,* 162 Md. 84, 90, 91, 159 A. 106; *Weilbacher v. Putts Co.,* 123 Md. 249, 265, 266, 91 A. 343. Compare *Potomac Edison Co. v. Johnson,* 160 Md. 33, 152 A. 633. So, if there is direct evidence of negligence, and all the facts causing the injury are known and testified to by witnesses at the trial, the condition for the inference does not exist. *Balto. & O. R. Co. v. Wilson,* 117 Md. 198, 206-208, 211-213, 83 A. 248. The scope of the rule is subject to the further qualification that it does not apply if the injury be inflicted by God or *vis major,* or is the result of an inevitable accident, as defined and contemplated by law.

It should be noted that the term "exclusive," when used to define the quantity of the possession, control, or management by the defendant of the injurious agency, is not employed in the sense that the possession, control, or management must be several, so that, for the inference of defendant's negligence to be operative, the de-

fendant in possession, control, or management must be singular and never plural. The meaning of the term as here employed is that the possession, control, or management must be exclusive as against all who do not have a concurrent joint possession, control, or management in fact, either as joint actors, possessors, or users, in respect of the injurious agency; or by way of representation or identification, as, generally, principal and agent, master and servant, members of a co-partnership, and corporation and employees. *Cooley on Torts* (3rd Ed.) 252, 262, 223, 242 *et seq.* See *Cox v. Forrest,* 60 Md. 74, 80. The signification of the term "exclusive" is that the possession, control, or management by the defendant of the injurious agency must not be shared with any other who is not concurrently and jointly in possession, control, or management of the injurious agency, so as to be concurrently and jointly liable in tort for the acts and things done in respect of such injurious agency.

Where, however, the probability that the injury is due to negligence is materially greater than that it is due to any other cause, and it appears that the defendant exclusively managed or controlled, and was responsible for the management or control of, the thing or condition which worked the injury, and the surrounding circumstances, and that the injury was one which, in accordance with the common knowledge of mankind and its experience in similar circumstances, would not ordinarily happen, unless because of some negligence on the part of the person having such control and management, the proper and natural inference forthwith arising is that the injury complained of was caused by the defendant's negligence, and the doctrine applies. Thus, the rule has been enforced in cases for injuries caused by a brick falling from a house abutting on a highway, in *Murray v. McShane,* 52 Md. 217; *Decola v. Cowan,* 102 Md. 551, 62 A. 1026; *Strasburger v. Vogel,* 103 Md. 85, 63 A. 202; by crossties dropping from a moving railway car on which they were being transported, in *Howser v. Cumberland & P. R. Co.,* 80 Md. 146, 30 A. 906; by contact

with a loose wire charged with a current of electicity, *Western Union Tel. Co. v. State, use of Nelson,* 82 Md. 293, 33 A. 763; *Walter v. Balto. Electric Co.,* 109 Md. 513, 71 A. 953; by pieces falling from a pile of lumber on the sidewalk in front of defendant's mill in *Heim v. Roberts,* 135 Md. 600, 109 A. 329; by the fall of a gate in defendant's fence along a highway in *Pindell v. Rubenstein,* 139 Md. 567, 578, 579, 115 A. 859; by wire of a telephone company's line becoming detached and on a highway where it became entangled with the wheel of an automobile, in *Chesapeake & Potomac Tel. Co. v. Miller,* 144 Md. 645, 125 A. 436; by the striking of an iron joist against a sprinkler while the joint was being lifted by machinery into position, in *Chesapeake Iron Works v. Hochschild, Kohn & Co.,* 119 Md. 303, 310, 311, 86 A. 345; by the fall of a coal chute in the midst of its use in delivering coal while extended from the coal wagon over a public sidewalk, *State v. Emerson & Morgan Coal Co.,* 150 Md. 429, 448, 449, 133 A. 601; by a piece of scantling falling from a scaffold on the eaves of a building at or near where the servants of the defendant were the only persons at work near the point from which the scantling fell, *Clough & Molloy v. Shilling,* 149 Md. 189, 203-207, 131 A. 343.

On the present record there is evidence tending to prove that the defendant and his servants had notice of the presence of free illuminating gas in the building of which the defendant and his servants had complete possession for the purpose of its demolition and removal. The jury could have found that, after this knowledge of the peril, the defendant had ample time, after the removal of the meters and before the explosion, to end the danger of the free gas, but failed to do so; and, instead of stopping the work or correcting the dangerous condition, or making any effort to remedy, or to have remedied, the grave danger, or to have the street closed to public travel, the defendant and his servants in the exclusive occupation of the premises persisted in the work of razing the building. The testimony does not tend to

establish what was the particular act or condition which produced the liberation in a closed space of the constituent elements of illuminating gas whose consequent sudden change of volume resulted in the explosion. Nor was it necessary, under the circumstances, for the plaintiff affirmatively to establish the specific generating cause which made effective for injury the neglect of the defendant in permitting to exist a known dangerous condition to third parties without the premises while the defendant proceeded with his work. The premises were in the possession of the defendant, the work to be done and the workmen and servants there employed were the defendant's, and they were subject to his sole and complete direction, management, and control. Every act there done or omitted to be done in the course of the employment and for his benefit was the act or omission of the defendant. For several days before and at the time of the accident it does not appear that any one except the servants and agents of the defendant was on the premises. It follows that everything there done or omitted was done or failed to be done by an agent of the defendant. Since, in the exercise of reasonable care and diligence, explosions of illuminating gas do not occur in buildings, especially where, as here, its presence is known for a sufficient length of time to abate the peril or render it harmless by precaution; and since it was the duty of the defendant to exercise such care and diligence; and the inanimate injurious agency itself and the surrounding circumstances were all subject to the defendant's exclusive control within the premises, the inference is that the defendant is liable for the explosion within the building. While such facts support the inference of negligence, they do not compel such an inference. Before a verdict may be rendered for the plaintiff, the facts upon which the inference depends must be found by the jury to be true, and to be sufficient to establish the defendant's negligence after the jury has weighed all other countervailing testimony in evidence, whether in denial, in rebuttal, or in exculpation. *Sweeney v.*

*Erving,* 228 U. S. 233, 238-241, 33 S. Ct. 416, 57 L. Ed. 815, 818, 819.

For the reasons here stated there was legally sufficient evidence to carry the case to the jury, and there was no error in the refusal to grant the instructions requested by the defendant in denial of plaintiff's right of recovery, and in submitting the case to the jury. The prayers granted by the court left the issues of fact for the determination of the jury under instructions which, in the court's opinion, were not prejudicial to the defendant.

> *Judgment affirmed, with costs to the appellee.*