(Decided June 28th, 1898.)

WILLIAM H. BENEDICK *vs.* WILLIAM A. POTTS.

*Negligence—Insufficient evidence—Accident on Switch-Back Railway—Res ipsa loquitur.*

Plaintiff was riding in an open car on defendant's circular, inclined, switch-back railway, at a pleasure resort, and fell from the car while it was passing through a tunnel. The car was not derailed and other persons in it were not injured, and there was no defect in the construction of the tunnel or of the car. No evidence was offered to show how or why plaintiff fell on the track, where he was afterwards found, unconscious. In an action to recover damages, *Held,* that there was no legally sufficient evidence of negligence on the part of the defendant to carry the case to the jury.

The mere fact that a person was injured, does not justify an inference that it was caused by negligence. The maxim *res ipsa loquitur* means that when the act that caused the injury is shown, the inference is in some cases authorized that it was a negligent act; but when the cause of the injury is unknown, the maxim does not permit an inference from the mere fact of injury, that it was caused by another's negligence.

Appeal from the Circuit Court for Queen Anne's County (STUMP, J.).

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE and BOYD, JJ.

*Albert Constable* (with whom were *John B. Brown* and *Harrison W. Vickers* on the brief) for the appellant.

*Hope H. Barroll* for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

This is an action to recover damages for a personal injury, and the single question which the record presents is whether there was legally sufficient evidence of the defendant's imputed negligence to carry the case to the jury. The facts are few and simple. The defendant, who is the appellee in this Court, was, at the time the occurrences about to be stated took place, engaged in running amusements at Tolchester Beach, a pleasure or excursion resort in Kent County. He owned and operated a mimic railway called Pike's Peak railroad. This is a wooden structure covering a space one hundred and fifty feet long and sixty-five feet wide. It is elevated thirty-five feet at its highest point. From this point a circular, or rather, an elliptical, inclined track runs downward, making three circuits before reaching the ground. The total length of this spiral track is about two thousand feet. Open and uncovered cars, weighing about six hundred pounds and having two horizontal seats wide enough for two passengers each, are hoisted up an incline to the highest point of the railway and are then run by gravity down and around the circular track to the ground. In making the descent the cars pass through a tunnel which is part of the structure and which is located about the middle of the last circle nearest the ground. This tunnel is one hundred and fifty feet long and completely encases that portion of the track and hides the cars and their occupants from all observation when passing through it. The roof of the tunnel is flat, and is covered with tongue and grooved boards running crosswise and securely nailed to rails. Down the centre of this roof and on its inner surface there is a narrow board two and a half or three inches wide which is fastened to the roof by wire nails that are clinched on the outside. The cars are provided with handles for the

occupants to grasp during the rapid descent. In August, eighteen hundred and ninety-five, the appellant in company with his wife, his sister-in-law and Miss Magee visited Tolchester Beach. Whilst there, he, his sister-in-law and Miss Magee entered one of these cars, the two ladies occupying the front seat and the appellant the rear one. The car was started and made the descent, but when it reached the ground at the end of the track, the appellant was not in it, though as it entered the tunnel he was seen to be upon it. Search was at once made and he was found inside the tunnel in an unconscious condition with a wound upon his head. He was carried out and taken back to Baltimore and after several days was restored to consciousness. For the injuries thus sustained this suit was brought. There was some evidence tending to show that a part of the board running down the centre of the tunnel roof had been slabbed off at one point, but there was nothing to indicate when that had happened. The car did not leave the track. No part of it was shown to be out of repair; the track was not defective, and no explanation is given in the record as to what caused the injury. The appellant distinctly stated that he made no effort to rise as he passed through the tunnel and that he did not release or relax his grasp on the sides of the car. He was on the car when it passed into the tunnel, he was not on it when it emerged. How he got off is not shown. Upon this state of facts the trial Court instructed the jury that there was no legally sufficient evidence to show that the defendant, the appellee, had been guilty of negligence, and the verdict and judgment were accordingly entered for the defendant. Thereupon the plaintiff brought up the record to this Court by appeal.

It is a perfectly well-settled principle that to entitle a plaintiff to recover in an action of this kind he must show not only that he has sustained an injury but that the defendant has been guilty of some negligence which produced that particular injury. The negligence alleged and the injury sued for must bear the relation of cause and effect. The concurrence of both and the *nexus*

between them must exist to constitute a cause of action.
As an injury may occur from causes other than the
negligence of the party sued, it is obvious that before a
liability on account of that injury can be fastened upon a
particular individual, it must be shown, or there must·
be evidence legally tending to show, that he is respon-
sible for it; that is, that he has been guilty of the negli-
gencè that produced or occasioned the injury. In no
instance can the bare fact that an injury has happened,
of itself and divorced from all the surrounding circum-
stances, justify the inference that the injury was caused·
by negligence. It is true that direct proof of negligence
is not necessary. Like any other fact, negligence may
be established by the proof of circumstances from which
its existence may be inferred. But this inference must,
after all, be a legitimate inference and not a mere specu-
lation or conjecture. There must be a logical relation
and connection between the circumstances proved and
the conclusion sought to be adduced from them. This
principle is never departed from, and in the very nature
of things it never can be disregarded. There are in-
stances in which the circumstances surrounding an oc-
currence and giving a character to it are held, if unex-
plained, to indicate the antecedent or coincident exist-
ence of negligence as the efficient cause of an injury
complained of. These are the instances where the doc-
trine of *res ipsa loquitur* is applied. This phrase, which
literally translated means that " the thing speaks for
itself," is merely a short way of saying that the circum-
stances attendant upon an accident are themselves of
such a character as to justify a jury in inferring negli-
gence as the cause of that accident; and the doctrine
which it embodies, though correct enough in itself, may
be said to be applicable to two classes of cases only, viz.,
first, " when the relation of carrier and passenger exists
and the accident arises from some abnormal condition
in the department of actual transportation; second,
where the injury arises from some condition or event
that is in its very nature so obviously destructive of the
safety of person or property and is so tortious in its

quality as, in the first instance at least, to permit no inference save that of negligence on the part of the person in the control of the injurious agency." *Thomas on Neg.* 574. But it is obvious that in both instances more than the mere isolated, single, segregated fact that an injury has happened must be known. The injury, without more, does not necessarily speak or indicate the *cause* of that injury—it is colorless; but the act that produced the injury being made apparent may, in the instances indicated, furnish the ground for a presumption that negligence set that act in motion. The maxim does not go to the extent of implying that you may from the mere fact of an injury infer what physical act produced that injury; but it means that when the physical act has been shown or is apparent and is not explained by the defendant, the conclusion that negligence superinduced it may be drawn as a legitimate deduction of fact. It permits an inference that the known act which produced the injury was a negligent act, but it does not permit an inference as to what act did produce the injury. Negligence manifestly cannot be predicated of any act until you know what the act is. Until you know *what* did occasion an injury, you cannot say that the defendant was guilty of some negligence that produced that injury. There is, therefore, a difference between inferring as a conclusion of fact *what* it was that did the injury; and inferring from a known or proven act occasioning the injury that there was negligence in the act that did produce the injury. To the first category the maxim *res ipsa loquitur* has no application; it is confined, when applicable at all, solely to the second. In no case where the thing which occasioned the injury is unknown has it ever been held that the maxim applies; because when the thing which produced the injury is unknown it cannot be said to speak or to indicate the existence of causative negligence. In all the cases, whether the relation of carrier and passenger existed or not, the injury alone furnished no evidence of negligence—something more was required to be shown. For instance: In *Penn. R. R. Co.* v. *MacKinney*, 124 P. St. 462, it was said: " A pas-

senger's leg is broken, while on his passage, in a railroad car. This mere fact is no evidence of negligence on the part of the carrier until something further be shown. If the witness who swears to the injury testifies also that it was caused by a crash in a collision with another train of cars belonging to the same carrier, the presumption of negligence immediately arises; not, however, from the fact that the leg was broken, but from the circumstances attending the fact." And so in *Byrne* v. *Boadle*, 2 Hurl. & Colt. 728, there was proof not only of an injury but there was evidence to show *how* the injury happened, and the presumption of negligence was applied, not because of there being an injury, but because of the way or manner in which the injury was produced. And in *Howser's case*, 80 Md. 146, the injury was caused by crossties falling from a moving train upon the plaintiff who was walking by the side of the track and the presumption of negligence was allowed, not as an inference deducible from the injury itself, but as a conclusion resulting from the method in which and the instrumentality by which the injury had been occasioned. In the recent case of *Consolidated Traction Co.* v. *Thalheimer*, Court of Errors and Appeals N. J. 2 Amer. Neg. Rep. 496, it appeared that the plaintiff was a passenger of the appellant, and, having been notified by the conductor that the car was approaching the point where she desired to alight, got up from her seat and walked to the door while the car was in motion, and, while going through the doorway, she was thrown into the street by a sudden lurch and thus injured. The Court said: " At all events, the fact that such a lurch or jerk occurred, as would have been unlikely to occur if proper care had been exercised, brings the case within the maxim *res ipsa loquitur*." The inference of negligence arose not from the injury to the passenger, but from the *act* that caused the injury. In *B. & O. R. R.* v. *Worthington*, 21 Md. 275, the train was derailed in consequence of an open switch, and it was held that the injury thus inflicted on the passenger was presumptive evidence of negligence—not that the mere injury raised such a presumption, but that the injury

caused in the way and under the circumstances shown indicated actionable negligence unless satisfactorily explained.

Whether, therefore, there be a contractual relation between the parties or not, there must be proof of negligence or proof of some circumstances from which negligence may be inferred, before an action can be sustained. And whether you characterize that inference an ordinary presumption of fact; or say of the act that caused the injury, the thing speaks for itself, you assert merely a rebuttable conclusion deduced from known and obvious premises. It follows, of course, that when the *act* that caused the injury is wholly unknown or undisclosed, it is simply and essentially impossible to affirm that there was a negligent act; and neither the doctrine of *res ipsa loquitur* nor any other principle of presumption can be invoked to fasten a liability upon the party charged with having by negligence caused the injury for the infliction of which a suit has been brought.

Now, in the case at bar there is no evidence that the car on the track was out of repair. The car went safely to its destination carrying the other occupants. There is no evidence that the roof of the tunnel struck the appellant, or that the fact that a small part of the central plank of the tunnel roof had been slabbed off had the most remote connection with the accident. It is a case presenting not a single circumstance showing *how* or by what agency the injury occurred, and in which, with nothing but the isolated fact of the injury having happened, being proved, it is insisted that the jury shall be allowed to speculate as to the cause that produced it, and then to *infer* from the cause thus assumed but not established, that there was actionable negligence. It is not an attempt to infer negligence from an apparent cause, but to infer the cause of the injury from the naked fact of injury, and then to superadd the further inference that this inferred cause proceeded from negligence. If in *Howser's case, supra,* there had been no other evidence than the mere *fact* of an injury, it cannot be pretended that the jury would have been allowed to speculate as to *how* the injury had occurred.

The appellant was on the car when it entered the tunnel; he was not on the car when it emerged, but was found in an unconscious state in the tunnel.   There was no defect in or abnormal condition affecting the means of actual transportation.   The other occupants of the car passed safely through.   What caused the appellant to be out of the car is a matter of pure conjecture.   No one has explained or attempted to explain how he got where he was found.   Indeed the two persons who occupied the front seat were ignorant of the appellant's absence from the car until it had reached its destination, and the appellant himself distinctly testified that he did not relax his hold to the car and did not attempt to rise but lowered his head as he entered the tunnel.   All that is certain is, that he was injured in *some* way and he asks that the jury may be allowed, in the absence of all explanatory evidence, to infer that some act of a negligent character for which the appellee is responsible, caused the injury sustained by the appellant.  No case has gone to that extent and no known principle can be cited to sanction such a position.   There has been no circumstance shown which furnishes the foundation for an inference of negligence; and the circumstances which have been shown obviously do not bring the case within the doctrine of *res ipsa loquitur*.   There was, consequently, no error in the ruling complained of and the judgment of the Circuit Court must be affirmed.

*Judgment affirmed with costs above and below.*

(Decided June 28th, 1898.)