# JUANA BAUTISTA ARENA ET AL.

## *v.*

# GUANICA CENTRAL.

Ponce, Law, No. 243.

1. Defendant employed deceased, who was an ignorant laborer, to look after and care for a powerful electric motor erected in a small pump house on its plantation. Certain dangerous cogwheels of this machinery

---

NOTE.—*Master and servant.*—As to different forms of statement of the general rule with respect to the master's duty as to places and appliances furnished to servant, see note to Armour & Co. v. Russell, 6 L.R.A.(N.S.) 602.

The question of the statutory liability of employers for acts constituting negligence in the exercise of superintendence is treated in a note to Canney v. Walkeine, 58 L.R.A. 44; as to negligence of superintendents while participating in the work, see page 47 of same note; also notes to Gallagher v. Newman, 16 L.R.A.(N.S.) 146, and Rippy v. Southern R. Co. 21 L.R.A. (N.S.) 601.

Arena v. Guanica Central.

were guarded by a metal semicircular wheel cover that fitted down over them. On the day of the accident one of defendant's superintendents came to the pump house with two or three mechanics, and, in order to repair these wheels, removed this guard or cover, and left the building without replacing the same, although the help called his attention to the fact, and requested him to do so. Within an hour the man in charge of the place wa found dead in the narrow space between the cogwheels and the wall of the building, his body being terribly mangled and the teeth of the wheels being smeared with his blood, flesh, and bones. Held: That defendant was guilty of negligence in not furnishing deceased a safe place in which to work; that deceased did not accept this unusual risk; and that it was for the jury to say whether deceased was guilty of any contributory negligence in the premises.

2. The duty of an employer to furnish an employee with reasonably safe tools and implements and a reasonably safe place to work in is a continuing one; and it is negligence in an employer to leave dangerous machinery, especially when it is in a confined space, without proper safeguards, so as to prevent injury to the help in charge of it.

3. Under subsections 1 and 2 of § 1 of the employers' liability act of Porto Rico of 1902, P. R. Rev. Stat. p. 151, an employer is liable when the injury occurs "by reason of any defect in the condition of the ways, works, or machinery connected with, or used in, the business of the employer, which arose from, or had not been discovered or remedied owing to, the negligence of the employer, or of any person in the service of the employer and intrusted by him with the duty of seeing that the ways, works, or machinery were in proper condition; or by reason of the negligence of any person in the service of the employer, intrusted with the exercising of superintendence, whose sole or principal duty is that of superintendence;"—and the matter of contributory negligence is for the jury.

4. Where a case has been fairly submitted to the jury, and a new trial is asked for, only for alleged errors of law, the same should not be granted when the court sees no reason to change its views in that regard.

Opinion filed February 12, 1910.

*Mr. J. A. Poventud,* attorney for plaintiffs.

*Mr. Edward S. Paine,* attorney for defendant.

**V. Porto Rico—24.**

Arena v. Guanica Central.

RODEY, Judge, delivered the following opinion:

This cause is before us on a motion for a new trial. It was tried at the January term, 1910, of the Ponce division of this court. The jury rendered a verdict in favor of plaintiffs for the sum of $2,000. It was an action for an alleged negligent injury resulting in the death of plaintiff's father.

The facts disclosed at the trial were about as follows:

The deceased was a healthy native Porto Rican about thirty years of age, earning from $1 to $1.25 a day at the time of the accident. He was a laborer, and had been engaged in general field work, digging ditches, etc., for the Central, for some time previous to the time of the accident, but shortly before that event he was put in charge of one of the defendant's electric pumps, with which it raises water out of the ground to irrigate its cane fields. The pump house in question was isolated and situated quite a distance off in the fields from any other house or habitation. The duties of the deceased were to watch the pumps and see that nothing went wrong, and presumably to oil the machinery and turn the electric current off and on as occasion required.

One of the superintendents of the Central, who had a force of men with him, went around to these different pump houses to fix and adjust the machinery whenever there was anything wrong. On the day of the accident there was something wrong with the electric motor or plant in the pump house in question, and the superintendent with some help came over to fix it. It appears that the pump was run by a 75-horse-power electric motor, the switch for which was on the side of the little building containing the plant. The large wheels geared together at one

Arena v. Guanica Central.

end of the pump were covered by a lid or cap made of metal, that fitted down over them like the half of a wheel-shaped cheese box and protected all persons approaching them from injury. There was a space of about 3 feet between the sides of these engaging cogwheels and the end of the little building. On the morning in question the superintendent, evidently because there was something wrong with these cogwheels, caused the help to remove this lid, thus exposing the revolving cogwheels. Either he did not finish the work he had in hand, or for some reason of his own, he did not replace this lid over the cogwheels, even though the help asked him if they should do so, he telling them not to do it. About the hour of noon, the superintendent and the help went away, leaving the revolving cogwheels thus exposed. A short time thereafter a little boy who happened to be in the vicinity heard a scream, and, on going to the door of the little house, looked in and saw the attendant dead. He gave the alarm, and, while a number of people in the vicinity came there, the body was not touched for some four or five hours thereafter, until one of the superintendents and a physician came to the scene. The physician testified, and so did several other witnesses, that the body was lying back down on the floor in this 3-foot space between the side of these cogwheels and the wall. The wheels and the surrounding space were smeared with crushed bone, blood, and flesh. One of the arms of the deceased had been completely ground away from the body and the viscera exposed about the chest, and the fingers of the other hand were entirely ground away. It appeared in evidence that the complainant Juana Bautista Arena was the mother of the deceased, and that the other three complainants were respectively the mother and the natural children of the deceased. On this de-

Arena v. Guanica Central.

veloping, the court ruled that the mother could not, under the statute, recover, and she was eliminated from the suit. It also appeared that Marcelina Soto, the mother of the children, was only suing in their behalf, and not on her own account, so the cause remained with the children only as plaintiffs.

Counsel for defendant in his brief in substance admits that the removal of this wheel guard or lid from this dangerous machinery, and the leaving of the wheels uncovered while the machinery was still in motion, in such a small pump house, exposed this ignorant man to unusual risk, and that it was negligence upon its part to do so. But on the other hand, he strenuously insists that the mere finding of the body of the man there does not show that defendant was guilty of the negligence that was the proximate cause of the accident, and that "a presumption of negligence does not arise from the fact of an injury, when the act that caused the injury is wholly unknown or undisclosed, and that the negligence alleged and the injury sued for must bear the relation of cause and effect. That the concurrence of both and the *nexus* between them must exist to constitute a cause of action." In support of this contention he cites us to the case of Benedick v. Potts, from the court of appeals of the state of Maryland, decided in June, 1898, reported in 88 Md. 52, 41 L.R.A. 478, 40 Atl. 1067.

That was a case where a man got on one of the little cars that are used in a mimic railway at an amusement resort, and, when gliding down the circle of the railroad and through a little tunnel, was seen on the car as he entered the tunnel, and was not on the car when it emerged therefrom. On search being made he was found unconscious in the little tunnel. All the other passengers came through safely, there was nothing wrong with

the little car, and no proper evidence of anything being wrong with the tunnel. The man recovered in a few weeks, but he brought an action for the injuries he had received. The opinion is one of the best considered to be found in the books, but the facts were entirely different from the case at bar. It refers to Howser v. Cumberland & P. R. Co. 80 Md. 146, 27 L.R.A. 154, 45 Am. St. Rep. 332, 30 Atl. 906, and distinguishes it, wherein the same court had decided the other way some time previously, although McSherry, the judge who decided the Benedick Case, had dissented. The Howser Case was one where a person not connected with a railway was injured by the falling of cross-ties from a car, while walking over a footpath running beside the roadbed, but not on the right of way. In this latter case, which we think has more bearing on the case we are now considering, the defendant was held liable because of the negligent piling of the ties on the car in the first instance, and, because of the evidence of that fact, the doctrine of *res ipsa loquitur* was held to apply. It was not a case of master and servant.

Now, in the case at bar, as stated, the facts are decidedly more against the defendant than they were in the Benedick or mimic railway case. Here a dangerous piece of machinery was negligently left unguarded, and within an hour the man was found dead beside it, with his limbs torn from his body and his blood, flesh, and bones in the teeth of the wheels. So, there cannot be much doubt in the mind of anyone as to how the accident occurred. There is a bare possibility, although the presumption of law is against it, that deceased committed suicide by purposely throwing himself into this dangerous machinery.

Counsel for defendant relies upon § 329 of the Revised Statutes of 1902 of Porto Rico, which is § 8 of the local employers'

Arena v. Guanica Central.

liability act, under which this action was brought. That section
reads as follows: "That no employee, or his widow or chil-
dren, or either of them, or his parents if there be no such wid-
ow or children, shall be entitled under this act to any right of
compensation or remedy against the employer in any case where
such employee knew of the defect or negligence which caused the
injury, and failed within a reasonable time to give, or cause
to be given, information thereof to the employer, or to some per-
son superior to himself in the service of the employer, who had
intrusted to him some general superintendence."

It is our opinion that this section by its very terms, consider-
ing the evidence here, renders the defendant liable. We think
the section in question was intended to prevent recovery where
an employee knew of the defect or negligence which caused the
injury, and failed within a reasonable time to give notice of it.

In this case the defendant had notice of it, because, by its
superintendent, it left the machinery there running in that con-
fined space in that exposed and dangerous condition. The de-
ceased, no doubt, had to oil the machinery, he had to pass around
it, and take care of it, that was what he was there for, and it
may have been that the taking off of the lid to some small extent
caused the oil and grease to be thrown over the floor, although an
expert denied that this would have been the result save imme-
diately beneath the wheels, if at all, as they turned towards each
other. Subsections 1 and 2 of § 1 of the local employers' lia-
bility act in question provide that the defendant shall be liable
where the injury is caused to an employee who is himself in
the exercise of due care and diligence at the time when the
accident takes place, when it occurs "by reason of any defect
in the condition of the ways, works, or machinery connected
with, or used in, the business of the employer, which arose from,

Arena v. Guanica Central.

or had not been discovered or remedied owing to, the negligence of the employer, or of any person in the service of the employer and intrusted by him with the duty of seeing that the ways, works, or machinery were in proper condition; or by reason of the negligence of any person in the service of the employer, intrusted with the exercising of superintendence, whose sole or principal duty is that of superintendence."

In the light of the facts and the law as thus quoted, it would, we think, have been unreasonable to take this case from the jury on the mere ground that there was no positive proof that deceased was in the exercise of due care and diligence at the time of the accident, because, we think under the circumstances, the jury was authorized in finding that the negligence of the defendant in taking the cap or guard off these dangerous cogwheels, and leaving them exposed, was the proximate cause of the injury, and was substantive proof that the appliances furnished were defective, of which defects the defendant, of course, had knowledge. See Looney v. Metropolitan R. Co. 200 U. S. 480, 50 L. ed. 564, 26 Sup. Ct. Rep. 303. It exposed the deceased to unusual risk and danger, which, under the law as we construe it, he did not accept. In the narrow space around these dangerous exposed cogwheels, deceased could hardly walk safely; the catching of his sleeves in the wheels would pull him to death. As suggested at the trial the revolving wheels may have thrown grease on the floor. The man may have been attempting to wipe the machinery clean after the work and fixing the superintendent and the help had just done on it. See case of Choctaw O. & G. R. Co. v. Holloway, 191 U. S. 339, 340, 48 L. ed. 210, 211, 24 Sup. Ct. Rep. 102, which we think sustains us in the views we are here expressing. The facts showed that defendant defaulted in giving deceased a reasonably safe place

to work in. The manufacturer of the machinery was more careful than the defendant, because the machinery came from the factory with this wheel guard or cover on it. We are unwilling to subscribe to the doctrine that an employer using dangerous machinery should not exercise at least reasonable care in guarding against physical injury to ignorant employees who are put in charge, or who have to work around the machines. In the light of the local statute above quoted, we think we are justified in saying that the duty of the defendant to provide a safe place to work in for the employee was a continuing one. See Kreigh v. Westinghouse, C. K. & Co. 214 U. S. 249, 53 L. ed. 984, 29 Sup. Ct. Rep. 619, and Deserant v. Cerillos Coal R. Co. 178 U. S. 409, 44 L. ed. 1127, 20 Sup. Ct. Rep. 967. But apart from this and several other views of the cause that were urged, we think, on the facts and the law as before quoted, we committed no error in leaving the case to the jury, and, they having found for the plaintiffs, the verdict ought not to be disturbed. The motion for a new trial will therefore be overruled, and an order to that effect will be entered.