STATE OF MARYLAND, for the Use of Joseph M. Thompson, et al, *v.* EMERSON & MORGAN COAL COMPANY, INC.

*Appeal—Bill of Exceptions—Payment For Record—Action For Negligence—Fall of Coal Chute—Injury to Pedestrian— Evidence—Prayers and Instructions.*

The failure to submit bills of exception to the appellee's counsel, within the time named in the local statute for so doing, is not ground for dismissing the appeal, if they were submitted within an extension of that time granted by the court, and the appellee was not prejudiced by the delay.        p. 435

The asserted failure of appellant to pay or secure payment of the cost of the record, within the time fixed by Rule 36, is not ground for dismissing the appeal, if it does not appear how or when the appellant was notified by the clerk as to the estimated cost, and it does appear that the appellee was not injured by the delay.                                   p. 436

In an action for the death of one who, while passing on the sidewalk under a chute attached to defendant's coal truck, was killed by the fall of the truck, a question asked a witness as

to what general vehicular traffic ran on that street "past" that block was properly excluded, in the absence of any evidence at the time of the ruling that the sidewalk was obstructed.    p. 439

In an action for the death of one who, while passing on the sidewalk under a coal chute attached to defendant's truck, was killed by the fall of the chute, evidence as to the custom of persons to pass under coal chutes extended across the sidewalks was admissible, not so much as reflecting on the negligence of deceased, as on the obligation of defendant, knowing of such custom, to exercise reasonable care to see that persons passing under such chutes are not injured thereby.        p. 439

The right of ingress to and egress from property abutting on a public highway includes the privilege of receiving such supplies and materials, including fuel, as are necessary or convenient for the comfortable enjoyment of the abutting property.
                                        p. 440

But the right to obstruct the highway even for such purpose is limited and subordinate to the paramount right of the public to free and safe passage, and if the obstruction is unnecessary, or if it subjects persons in the lawful use of the street to unnecessary dangers, or if it is maintained for an unreasonable length of time, it cannot be justified.    p. 440

If one engaged in delivering coal to houses by means of chutes above the sidewalk knows that persons generally are accustomed to pass under such chutes, rather than wait or assume the risk of proceeding on that part of the street given up to vehicles, he is bound to use reasonable care to see that persons passing under the chutes are not subjected to dangers other than those visibly incident to the flow of coal through the chutes, such as the fall or spilling of coal.        p. 442

In an action for the death of one who, while passing on the sidewalk under a coal chute attached to defendant's truck, was killed by the fall of the chute, it was proper to exclude questions, asked of persons residing in nearby houses, as to whether they could have heard a call from the driver to deceased not to pass under the chute, the questions not referring to the loudness of the call, and they thus asking for an opinion upon an incomplete hypothesis.        p. 443

That improper questions to a witness were allowed was not ground for reversal, in view of the fact that the evidence thereby elicited was afterwards stricken out.          p. 443

A question asked a witness, to whom was shown a part of a link from the chain, the breaking of which was claimed to have caused the accident, as to where was the "worn part, that part that broke off and gave way," was objectionable as assuming facts.                          pp. 443, 444

The refusal to permit a question to be asked a witness as to the whereabouts of a part of an appliance was harmless if the witness afterwards stated that she did not know where it was.
                          p. 444

In an action for a death caused by the fall of the chute of a coal truck, evidence that the truck had been overhauled and placed in good condition a couple of weeks before the accident was admissible.                          p. 444

Where an expert witness, asked whether he could tell why a certain chain broke, answered that he could not tell, but that he had a "theory," it was error to allow him to give that theory, without giving any reasons, this being largely conjecture.  p. 444

An expert, engaged in the manufacture of wagons, and wagon, automobile and coal bodies, and whose company installed hoisting devices on coal bodies, when examined as to the breaking of a chain by which the chute of a coal truck was suspended, was properly allowed to tell, from his examination of a part of the broken link of the chain, how great a fraction of an inch the ends of it and of the missing part had worn.
                          pp. 444, 445

Where a witness for plaintiff testified in chief that he had examined the coal truck which caused the accident, and witnesses for defendant denied that he had done so, the court properly refused to allow the former witness to be asked on rebuttal whether he had made such an examination.      p. 445·

It was within the court's discretion to allow plaintiff's witness, a police officer, when called in rebuttal, to be asked on cross-examination, in reference to a statement made by him in his report of the accident, whether he had not said, at a coroner's inquest, that the substance of this statement was told him by another.                          p. 445

In an action for the death of one killed by the fall of a chute attached to a coal truck belonging to defendant, a prayer submitted by plaintiff, which made recovery depend on the existence of certain specified defects in the hoisting device of the truck, was properly modified by requiring the jury to find in addition that defendant in the exercise of reasonable care and diligence should have discovered such defects in time to avoid the accident, defendant not being an absolute insurer of its appliances.                              pp. 445, 446

In an action for a death caused by defects in the hoisting machinery of defendant's coal truck, a prayer that defendant had adduced no evidence to show that it had adopted and enforced adequate rules for the inspection of such machinery was too general in form and presented no question which could be considered on appeal.                         p. 447

In an action for a death caused by defects in the hoisting machinery of defendant's coal truck, there being legally sufficient evidence that defendant maintained a system for the inspection of such machinery, the question of the adequacy of such system was for the jury.                          p. 447

In an action for the death of one killed, while passing on the sidewalk beneath the chute of a coal truck, by the fall of the chute, it was proper to give an instruction, supported by legally sufficient evidence, that there could be no recovery if the driver of the truck warned deceased, in the words and in the manner described in the driver's testimony, not to pass under the chute, and she heard the words and understood them to be a warning of danger, but in spite of the warning passed under the chute.                              p. 448

Where an accident is caused by the operation of some instrumentality in the exclusive control of defendant, for which no explanation can be offered by the plaintiff, under circumstances which involve a breach of duty on defendant's part to avoid injuring plaintiff through the operation of such instrumentality, a presumption of negligence arises from the happening of the accident.                              p. 448

The fall of a chute, attached to a coal truck, upon one passing on the sidewalk under the chute, raised a presumption of negligence on the part of the owner of the truck, the latter

having reason to anticipate that persons would pass under it, unless plainly warned or prevented, and being consequently bound to see that the chute would not fall and injure one so passing.         p. 449

In an action for the death of one who, while passing on the sidewalk under the chute of defendant's coal truck, was killed by the fall of the chute, as a result of the breaking of a link in a chain of the hoisting machinery, defendant was not liable if there had been adequate and careful inspection of the truck, and negligence need not be inferred by the jury from the mere fact that defendant had no definite, fixed, and certain rules governing such inspection, although the jury could consider that fact in determining whether the inspection was adequate.
        pp. 449, 450

One killed by the fall of the chute of a coal truck was not guilty of contributory negligence, as a matter of law, because she passed under the chute, although the driver of the truck testified that he requested her not to go under the chute, it being a question for the jury whether this was a warning of danger, and it being possible that she did not hear it owing to the coal running in the chute, or know that he was addressing her.         p. 451

*Decided April 8th, 1926.*

Appeal from the Superior Court of Baltimore City (STEIN, J.).

Action by the State of Maryland, for the use of Joseph M. Thompson and others, against the Emerson & Morgan Coal Company, Inc. From a judgment for defendant, plaintiffs appeal. Reversed.

The cause was argued before BOND, C. J., PATTISON, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Isaac Lobe Straus,* with whom was *Stephen J. McDonough* on the brief, for the appellants.

*Robert D. Bartlett,* with whom were *Bartlett, Poe & Claggett* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The Emerson & Morgan Coal Company, Inc., was, on April 24th, 1924, engaged in the business of selling and delivering coal in the City of Baltimore. Shortly before two o'clock in the afternoon of that day, one of its trucks, loaded with two and one-half tons of coal, backed up at a right angle to the curb in front of 324 on the west side of North Monroe Street in that city for the purpose of delivering the coal into the cellar of that house. The truck was furnished with a chute and a hoisting mechanism, which were used to unload it. In unloading the truck, the chute, which was a steel trough, was attached to the rear end of the truck body, and extended through a window into the cellar of the house. The truck body with its load of coal was then elevated by the hoisting mechanism so that the floor of the truck and the chute formed a continuous plane inclined at such an angle that the coal would slide by gravity from the truck body into the chute and through it into the cellar. At the time the accident which is the basis of this suit happened, the chute had been adjusted, and the body of the truck elevated, and two of the appellee's employees were engaged in unloading the coal. One of them stood at the rear of the truck controlling the volume of the flow of coal by manipulating the flood gate, and the other had his head in the cellar window, directing the course of the flow of the coal running through the chute into the cellar.

The truck itself extended east across a part of the southbound car tracks on Monroe street, so that the truck and the chute together formed an obstruction across the entire sidewalk on the west side of Monroe street, the space between the sidewalk and the car tracks, and a part of the southbound car track.

Whilst the truck was in that position, Mrs. Josceph M. Thompson, wheeling a baby carriage, going north on Monroe street, approached and attempted to cross under the chute. She had pushed the carriage under it and was in the act of going under it herself, when it collapsed, striking her; crush-

ing her to the pavement and inflicting injuries from which she died a short time afterwards.

She left to survive her a husband and four children, aged from ten months to twelve years, and on June 21st, 1924, this suit was brought in the name of the State for their use to recover for the loss which they claim to have suffered as a result of her death, which they say was occasioned by the defendant's negligence. The case was tried before the court and a jury in the Superior Court of Baltimore City, and the verdict and judgment at that trial being for the defendant, the plaintiffs appealed.

The record contains eighteen bills of exception, which were signed on the 30th of December, 1925. The judgment was entered on August 25, 1925, and on December 7th, 1925, the court signed an order extending the time for signing the several bills of exception to January 8th, 1926, and for submitting the exceptions to appellee's attorneys to December 18th, 1925. The appellee now moves to dismiss the appeal on the ground that the bills were not submitted to its counsel until December 18th, 1925, although under the statute they should have been submitted to them not later than December 5th, 1925, and upon the further ground that the record was not paid for within the time prescribed by the rules of this court. When the bills were submitted to the attorneys for the appellee, they suggested certain changes, which appear to have been made before the bills were actually signed and filed, so that it suffered no injury through the failure of the appellants to submit the exceptions for their inspection within the time required by the statute (chapter 338, Acts 1924). These points were not pressed at the argument of the case, and in regard to them it is sufficient to say (1) that, the first point is concluded by the case of *Wegefarth v. Weissner,* 132 Md. 603, where it was held that under chapter 625 of the Acts of 1916, which for the purposes of this question is similar to the present act, that the trial court could for "good and sufficient reasons" extend the time for signing the bills of exceptions beyond the period designated by the statute,

and by the case of *Middendorf v. Milburn Co.,* 137 Md. 595, where it was held that, although the bills of exception in that case were not submitted to the attorneys for the appellee before the expiration of the time "provided by the statute, but nevertheless they were signed by the court within the expiration of the time limited by the statute," they were valid because it did not appear that the appellee "suffered any injury thereby"; (2) as to the second point, that the appellant failed to pay or secure payment for printing the record within the time fixed by Rule 36 of this Court, we do not feel that we have before us sufficient data to pass upon the question. The appellee suggests to the Court that an estimate of the cost of printing the record had been sent by the clerk of this Court to the attorneys for the appellant on January 8th, 1926, and that the attorneys for the appellees were "advised" by the clerk, on January 22nd and January 27th, that he had "heard nothing from the attorneys in reply," but it does not appear how the notice was sent or when it was received. The appellant by way of reply to these allegations avers that its attorneys, "within a comparatively short time" after receiving the estimate of the cost of printing the record, directed the printer to "proceed with the printing" and arranged to pay therefor. Manifestly that would be no answer at all, for the rule requires that the cost of printing the record shall be paid or secured "to the clerk within ten days from the receipt of such notice," and the appellant cannot escape the effect of the rule by employing a printer independently of the clerk to print the record, at such time as he may deem convenient, and in a proper case, where a failure to comply with the rule injures the appellee, such failure would be ground for dismissing the appeal. But since in this case it does not appear except from hearsay when the notice was sent, or, from any source, how it was sent or when it was received, and since it does appear that the appellee was not injured by the delay, the second ground set out in the motion to dismiss the appeal is not sufficient, and the motion will be overruled. *Mayor and City Council*

*of Havre de Grace v. Fletcher,* 112 Md. 562; *Jacobs v. Dis-haroon,* 113 Md. 92; *German Union Fire Ins. Co. v. Cohen,* 114 Md. 130.

Seventeen of the eighteen exceptions relate to rulings of the trial court upon questions of evidence, and the eighteenth to its rulings on the prayers and the exceptions thereto. Before attempting to deal with these exceptions *serialim,* we will refer briefly and generally to the effect of the evidence relating to them.

It is not clear that the appellant had any definite theory as to the cause of the accident. Its witnesses could not or at least they did not express any opinion upon that point. George P. Black, a police officer, in describing the hoisting mechanism, said that the cart, while it was elevated by means of the hoisting mechanism, was suspended from chains, one end of which was attached to an "eyelet" in the top of a steel upright on either side of the truck and the other to the bottom of the truck; that one of these eyelets looked "old and worn," and that it was worn down so that the chain pulled through it and was hanging down, but he did not say or intimate that the accident was caused by that condition of the eyelet, and in the absence of any satisfactory description of the hoisting mechanism it is impossible for us to say that the condition of the eyelet described by the witness had anything to do with the accident. The same witness further said that there was no broken link in the chain, but that the eyelet was "broken." August P. W. Desor said that he saw one of the men with the truck take from it what looked like a broken chain. Officer Claude E. Long testified that he saw the truck shortly after the accident, and that he found that the "eye" on the upright on the right side of the truck was worn and broken, so that the chain pulled through, but that the chain itself was not broken, that he did not know why the truck body fell, but "judged" that it was because the chain pulled through the eyelet. There was other testimony offered by the appellant tending to show that just before the accident and before it had been elevated

the rear end of the truck was about four or five feet from the ground at the curb, and that after the chute fell Mrs. Thompson was found under it partly covered with coal, and that the baby had been thrown from its carriage, which was overturned when Mrs. Thompson, who was pushing it, was struck and fell. The effect of this testimony is that, as Mrs. Thompson was passing under the chute, for some cause not clearly shown by the testimony, it fell on her and caused the injuries from which she died.

The defendant on the other hand has a definite theory of the accident. It contended that the fall of the chute was due to a defective link in the hoisting chain on the left side of the body of the truck; that as a result of the defect the chain broke or pulled apart; that the link was little worn, and that the defect which caused it to break was latent, that a part of the broken link was found at the scene of the accident, and that it showed that it had broken at a point where it had been welded. And it offered testimony tending to support these contentions, and also to show that its trucks were inspected daily to see if the mechanism operated properly. It further appeared from the defendant's testimony that the rear end of the truck when fully elevated was seven and a half feet above the sidewalk.

There was some conflict in the testimony as to the height of the chute above the sidewalk at the point where Mrs. Thompson attempted to cross under it. Dorsey, the driver, said that she had to stoop so that she could have picked up a pin from the pavement, but he also testified that the rear end of the truck was elevated about seven feet above the pavement. The same witness also testified that he had said to Mrs. Thompson when she was about twelve feet from the chute, "Lady, please don't go under this chute," and he repeated the warning when she continued to approach, but that she ignored it and was crossing under it when it fell.

From this statement of the evidence it is apparent that the plaintiff's right to recover rests upon the doctrine of *res ipsa loquitur*, and that the defences are (1) that there was no

evidence legally sufficient to show primary negligence on the part of the defendant, and (2) if there was, nevertheless the negligence of Mrs. Thompson so far contributed to the happening of the accident complained of that the plaintiff cannot recover in this case. And we will now consider the exceptions in connection with those contentions.

George P. Black was asked to what extent general vehicular traffic ran on Monroe street "past" the 300 block. The court refused to permit the question and that ruling is the subject of the first exception. When that ruling was made there was no evidence in the case which showed that the sidewalk on which Mrs. Thompson was traveling when she was injured was obstructed, and in the absence of any offer on the part of the plaintiff to show that fact, we find no error in this ruling.

Later the same witness was asked this question: "Now, as you have seen these trucks delivering coal in that way through the projected chutes from the bodies of the carts into the windows of residences, what habitually, according to your observation, has been the course of people walking along the sidewalk?" To which the defendant objected. The court sustained the objection and that ruling is the subject of the second exception. We will assume from a colloquy between court and counsel immediately preceding it that the question was designed to show that it was a general custom of travellers on the streets of Baltimore City to walk under coal chutes when they were extended across the sidewalks of such streets. Assuming as we do that it was in proper form to elicit testimony to that effect, under the decisions of this court it should have been permitted, not so much as reflecting upon the negligence of the plaintiff as upon the negligence of the defendant. For if the defendant knew that travellers, using the sidewalks of the city streets, usually or frequently crossed under the chutes obstructing and extended above the sidewalks from its wagons or carts unloading coal to the houses into which the coal was delivered by means of the chute, it became incumbent upon it to exercise at least ordi-

nary care to see that persons so crossing under such chutes
were not injured thereby. Monroe street was a public high-
way, and throughout its whole extent from end to end and
from side to side was dedicated to public uses. Under the
general rule, the right of the public to free and unobstructed
passageway over every part of it was paramount to all other
rights except such as are reasonably necessary to effect the
purposes for which the street exists. Those purposes were
twofold; first, to afford a safe and convenient way for the
passage of the general public, and, second, to afford to per-
sons abutting thereon ingress and egress to and from their
properties. The right of ingress and egress includes neces-
sarily the privilege of receiving such supplies and materials,
including fuel, as are necessary or convenient for the com-
fortable enjoyment of the abutting properties, and, as inci-
dent thereto, the privilege of temporarily obstructing the
street and sidewalk for that purpose. But the right to ob-
struct the highway, even for such purpose, is limited and sub-
ordinate to the paramount right of the public to free and safe
passage thereover. And if the obstruction is unnecessary, or
if it subjects persons in the lawful use of the street to un-
necessary dangers, or if it is maintained for an unreasonable
length of time, it cannot be justified under the exception to
which we have referred. These general principles have been
long established, although there may have been some con-
fusion in their application to the facts involved in the cases
in which they have been considered. This Court in *Brauer
v. Balto. Refrigerating Co.*, 99 Md. 376, said: "The courts
have frequently been called upon to consider the legal propo-
sitions controlling the use of the public streets. The cases
upon the subject agree that the fundamental right to their
enjoyment is that of the general public for passage over and
along them. In the exercise of this right persons employing
vehicles are primarily entitled to occupy the bed of the street
while pedestrians have a similar priority of claim upon the
sidewalk. The owners of lots abutting on streets are per-
mitted to encroach to a limited extent, for the necessary

transaction of their business upon the primary right of the public provided they do not unreasonably interfere with its exercise. But it must always be borne in mind that the right of the public to employ the streets for purposes of travel and transportation is the paramount one and that of the abutter to occupy them for other purposes is a permissive and subordinate one. * * * A merchant or manufacturer whose place of business abuts on the street of a populous city may temporarily obstruct the sidewalk in front of his building in the process of loading or unloading his merchandise or the product of his factory provided he does not in so doing unreasonably encumber the footway or interfere with the reasonable use and enjoyment of the adjacent property." To the same effect is *Garibaldi v. O'Connor,* 210 Ill. 284, 66 L. R. A. 74, where it was said: "Abutters upon a public street may use the sidewalk in front of their premises for the purpose of loading and unloading goods, merchandise, or other like articles in which they may deal or use; but the sidewalks belong to the public, and the public primarily have the right to the free and unobstructed use thereof, subject to reasonable and necessary limitations, one of which is the right of an abutting property owner to temporarily obstruct the walk by loading or unloading goods, wares or merchandise when such obstruction is reasonably necessary. Such obstruction must, however, be both reasonable as to the necessity therefor, and temporary in point of time. The prior and superior right of passage is possessed by the public." And in *McQuillan on Mun. Corp.,* par. 1339, the same rule is stated in this way: "So it is not uncommon in certain lines of business for trucks to back up to the sidewalk and block passage thereon by loading or unloading goods by means of skids or otherwise. And it is held that such obstruction of the street or sidewalk may be justifiable under certain conditions, the rule being that a merchant may use and temporarily obstruct the street and sidewalk in front of his premises for loading and unloading goods, when not restrained by ordinance, if he does not unnecessarily or unreasonably interfere

with their use by the traveling public. However, such use
of the street and sidewalk must be (1) necessary, (2) tem-
porary, and (3) reasonable, and whether the use is such is
a question of fact to be determined with reference to time,
place and circumstances." See also same section in the sup-
plement to that work. The application of these general
principles is illustrated in a number of cases collected in a
note to *Tolman & Co. v. City of Chicago* (Ill.), 24 L. R. A.,
N. S. 97. And if in such a case as this, a person, engaged in
delivering fuel to houses by means of chutes elevated above
the sidewalk, knows that persons generally are accustomed
to pass under such chutes rather than wait until the fuel
is unloaded, or assume the risk of proceeding over that part
of the street given up to vehicular traffic, then such person
is bound to use reasonable care to see that persons passing
under such chutes are not subjected to dangers other than
such as are visibly incident to the flow of coal through the
chutes, such as the fall or spilling of coal over the sides
thereof. That conclusion is not only consistent with com-
mon sense, but is supported by authority. In *Sheridan v.
B. & O. R. Co.,* 101 Md. 50, the plaintiff was injured while
attempting to cross over the bumpers of a train stalled across
a public highway. It was proved that travellers on that
highway had long been accustomed to go between or over or
under trains similarly stalled at that crossing, and in deal-
ing with the question of the defendant's negligence in that
case it was said that the conduct of the defendant in so long
permitting the "crossing of its stalled trains" amounted to
an implied invitation to the appellant to cross between its
cars at the time of the accident. And while in this case
acquiescence is not necessarily involved, yet knowledge on
the part of the defendant, that it was the general custom
of travellers on the streets of Baltimore city to pass under
coal chutes temporarily obstructing the sidewalks, had much
the same effect, because it imposed upon it the duty of using
reasonable care to avoid injuring such persons by its opera-
tion of its chutes. To the same effect are *Burke v. Md. & Pa.*

*R.,* 134 Md. 162, and *Balto. & O. R. Co. v. State,* 141 Md. 523.

Mrs. Alice V. Cook, who was in the vestibule of her home, No. 310 N. Monroe street, and Mrs. Elizabeth Edwards, who was standing on the steps of her home, No. 318 N. Monroe street, were asked on behalf of the plaintiff whether they could have heard "if any one had called out" three doors and seven doors away, respectively. These questions were objected to and the objection sustained, and those rulings are the subject of the fourth and fifth exceptions. It appeared from the testimony preceding these questions that the houses in that block were about thirteen or fourteen feet wide, and that coal was at the time running through the chute. One objection to these questions is that when they were asked there was no testimony that any one had called or given any warning, and the questions were premature, but aside from that they were obviously objectionable, because they did not require the witnesses to testify to facts, but to give an opinion upon an incomplete hypothesis. Whether they could have heard a call given at No. 324 Monroe Street must have depended upon how loud the call was, and yet the question did not require them to consider that fact at all.

Mrs. Bertha Jentner, a witness for the defendant, was asked whether she had not heard Mary Boyer, a witness for the plaintiff, say at a stated time and place that she had heard some one give a warning just before the accident happened. The court permitted the questions over plaintiff's objection, and these rulings are the subject of the sixth and seventh exceptions. There was no proper foundation for these questions, but as the evidence elicited by them was afterwards stricken out, the appellant was not injured by those rulings, and they are free from reversible error.

There is no point in the eighth exception. A witness for the defendant was handed what he was told was a part of a link from the chain, the breaking of which, the defendant claimed, caused the accident, and examined as to it. On cross-examination he was asked where the other part of the

link was, "the worn part, that part that broke off and gave away," which the court refused to permit. This question was of course objectionable because it improperly assumed facts, but aside from that the witness subsequently testified that he had never seen the other part and did not know where it was.

The ninth and tenth exceptions were taken to the admission of evidence to the effect that the truck in question had been overhauled and placed in "good condition" a couple of weeks before the accident. This evidence was relevant under the issues in the case and was properly admitted. Exceptions twelve to fifteen, inclusive, relate to the admission of testimony given by Edward M. Leonhardt, and explaining why the link offered in evidence "broke," and to what extent the missing part of the link had worn away. Leonhardt, who was offered as an expert witness, first testified that he was engaged in the business of manufacturing wagons, wagon bodies, automobile bodies and coal bodies, and that his company installed hoisting devices on coal bodies, and that it had installed the body on the truck which injured Mrs. Thompson; that he did not personally inspect the truck before it was delivered; that the chains used in the hoisting device were bought from the West Shore Chain Company, by which they were tested, although he had no personal knowledge of the tests; that although he was a woodworker he had had a "lifetime's" experience with chains. He was then handed the link and asked if he could tell why it broke, and he replied "No, I cannot tell you what caused it to break. I have a theory why it broke from the appearance of the link, but I cannot tell definitely. He was then allowed to give that "theory," which was that the "link where the chain was forged has given away." The witness gave no reasons for his conclusion and, in view of his own statement, it was largely conjecture and should not have been admitted, but it is not apparent that the appellant could possibly have been injured by his answer. The same witness was then asked to tell from an examination of the part of the link in his

possession how much the end of it, and the end of the
missing part, had worn, and he answered "one thirty-second
of an inch." In view of the experience and qualifications of
the witness these questions, which were the subject of the
fourteenth and fifteenth exceptions, were properly allowed.

Officer Claude E. Long, called for the plaintiff, testified
in chief that he had inspected the coal truck which caused
the accident shortly after it had occurred. Witnesses for
the defendant testified that he had not examined it. In
rebuttal, the plaintiff again asked the witness if he had in-
spected the truck, but the court refused to allow the ques-
tion, and in that ruling, the subject of the sixteenth excep-
tion, we concur. Nor do we discover any error in the ruling
involved in the seventeenth exception, which was taken to
the action of the court in permitting the defendant to ask,
in the cross-examination of this witness when called in re-
buttal, this question: "Now, you have stated in your report
that you said that the lifting gear had broken. Didn't you
say at the coroner's inquest that the colored driver told you
that?" The matter was within the sound discretion of the
court, and the record discloses no abuse of that discretion.
The third and eleventh exceptions were not pressed in this
court and need not be considered.

This brings us to the eighteenth exception, which deals
with the rulings of the court on the prayers.

The plaintiff offered three prayers, of which the court
granted the third, designated in the record as the "second,"
refused the second, called in record "1-A," and refused the
first as offered, but granted it with a modification. The de-
fendant offered twelve prayers, of which its "A," "B,"
fourth, fifth, eighth and tenth were refused, and the others
except the third were granted as offered, and the third was
modified and granted.

By its first prayer as offered, the plaintiff's right to re-
cover was made to depend upon whether the accident was
caused by a defect in the eyelet referred to in the evidence,
or in the link of the chain offered in evidence, while as a

result of the court's modification, it was not allowed to re-
cover even though the jury found that the accident was
caused by either of such defects, unless they further found
that the defendant in the exercise of reasonable care and
diligence should have discovered them (inferentially) in
time to have avoided the accident. This prayer in our opin-
ion as offered did not correctly state the law applicable to
the case. The defendant was not an absolute insurer of
the safety of its appliances. It was not engaged in an un-
lawful or a wrongful act. It was only held to the exercise
of ordinary and reasonable care, considered in connection
with the nature and character of the instrumentality em-
ployed by it, to avoid injuring others also in the lawful use
of the highway, and its liability must have rested upon its
failure to use such care. If no ordinary care or reasonable
diligence could have discovered the defects referred to in
the prayer, the plaintiff was not entitled to recover for in-
juries resulting therefrom, yet under that prayer, as soon as
it appeared from the evidence that the accident was caused
by the defective eyelet or the defective link, the defendant's
liability would have become fixed, even though the jury be-
lieved that no degree of care or diligence could have dis-
covered the defect. That certainly is not the law, and none
of the cases cited by the appellant supports that proposition.
It will be noticed that in this prayer the plaintiff predicates
its right to recover not upon the mere unexplained fall of the
chute, but upon certain specified defects in the hoisting device
of the truck to which it was attached, and such cases as *Pin-
dell v. Rubenstein,* 139 Md. 567, are not in point. In such
a case as this, when the plaintiff shows that the accident was
due to some broken or defective machinery, he must go fur-
ther and show that the defect was due to negligence on the
part of the defendant. And that conclusion is, we think,
supported by these cases: *South Balto. Car Works v.. Schaef-
fer,* 96 Md. 103, where the court, dealing with an injury
caused by a defective bolt, said: "It is obvious, that the
plaintiff must not only show that he was injured, because

the bolts were defective, but he must go one step further and offer evidence legally sufficient to show that the defendant did not use reasonable care in procuring proper bolts for the adjustment of the knife"; *Walter v. Balto. Elec. Co.,* 109 Md. 525, where the court, dealing with an injury resulting from contact with a live wire, said: "It has been held in different cases that electric companies are not insurers of the public using the streets over which their wires are strung on poles and are therefore not liable for all injuries resulting from contact with their wires irrespective of the circumstances under which they occur. What they are liable for is the exercise of that degree of care which the law imposes upon them in view of the dangerous character of their wires and the rights of the public in the highways over which they are suspended"; and *Chesapeake Iron Works v. Hochschild,* 119 Md. 313.

The plaintiff's second prayer was properly refused. It sought to have the court rule that the defendant had adduced "no evidence" to show that it had adopted and enforced adequate rules for the inspection of the hoisting machinery of its trucks. It has been repeatedly held that a prayer in this form is too general and presents no question which this court can consider, but as the case must be remanded, it may be added that there was in the case legally sufficient evidence from which it could have been inferred that the defendant maintained a system of inspection, and whether that system was adequate was a question for the jury. The cases of *Md., Del. & Va. R. Co. v. Brown,* 109 Md. 304, and *Crawford v. United Railways Co.,* 101 Md. 402, cited by the appellant, can hardly be regarded as in point. In those cases the court was not dealing with the legal sufficiency of the evidence to show the adoption of a proper system of inspection, but with the question of whether the master could delegate the duty of adopting such a system or supervising its operation to a servant, so as to excuse himself from the duty of furnishing the servant safe appliances and a safe place to work. In those cases the court said that there was no evi-

dence that any such system had been adopted, and that the
failure to adopt such a system was evidence of a breach of
duty owed by the master to the servant, but in this case the
question is not whether the defendant adopted and enforced
any definite system of rules for the inspection of its trucks,
but whether the defects causing the injury ought to have
been discovered upon any adequate or proper inspection of
them.

The plaintiff's objection to the defendant's third prayer
goes rather to the weight of the evidence upon which it is
predicated than to the legal proposition which it presents.
By it the jury were told that if Mrs. Thompson was warned
not to pass under the chute by Dorsey in the words and in
the manner described in his testimony, and that she heard
the words and understood them to be a warning of danger,
but in spite of the warning passed under the chute, the verdict
should be for defendant. As the case is to be retried, and
since it would serve no useful purpose, we will not refer in
detail to the evidence upon which this prayer is based, but
it is sufficient to say that there is in the record evidence
legally sufficient to support it, and that the proposition of
law involved in it is sound.

There was, however, error in granting the defendant's
sixth prayer, by which the jury were told "that the mere
happening of the accident complained of raised no presump-
tion of negligence on the part of the defendant." Such an
instruction in a case of this character is misleading and
improper, because where an accident is caused by the opera-
tion of some instrumentality in the exclusive control of the
defendant for which no explanation can be offered by the
plaintiff, under circumstances which involve a breach of a
duty on the part of the defendant to avoid injuring the plain-
tiff through the operation of such instrumentality, a presump-
tion of negligence does arise from the mere happening of
the accident. *Clough & Malloy v. Shilling,* 149 Md. 189;
*Pindell v. Rubenstein,* 139 Md. 578. In the case last cited,
in dealing with a similar prayer offered under like circum-

stances, it was said: "The fourth prayer, which instructs the jury that no presumption of negligence arises from the mere happening of an accident, and that the burden was on the plaintiff to prove that it was occasioned by the negligence of the defendant, was, under the circumstances of this case, not only misleading, but incorrect, because if the plaintiff's evidence is accepted, this is one of that class of cases in which it may be inferred from the mere happening of an accident, when taken in connection with the circumstances surrounding it, that it was due to a breach of some duty on the part of the person controlling or responsible for the agency causing it." The rule adopted by this Court for applying the underlying principle invoked by the prayer is thus stated in *Benedick v. Potts,* 88 Md. 55. "In no instance can the bare fact that an injury has happened, of itself and divorced from all the surrounding circumstances, justify the inference that the injury was caused by negligence." In this case, if the testimony tending to support the plaintiff's contention is accepted, Mrs. Thompson, wheeling a baby carriage, was proceeding along the sidewalk of a public street in Baltimore City, when she met an obstruction caused by a coal chute operated by the defendant extended across the sidewalk at such an elevation that she could without unusual inconvenience cross under it, which she attempted to do, but the instant she was under it it fell and injured her. Under such conditions the doctrine of *res ipsa loquitur* applies. The defendant was obstructing a public highway with an instrumentality which might constitute a very serious danger to persons crossing under it unless properly maintained and operated, and it ought to have anticipated that persons in the lawful use thereof might, unless plainly warned or prevented, cross under it, and, knowing that, it was bound to see that the chute was so secured that it would not fall and injure them if they did so, and its failure to do that raised a *prima facie* presumption that it had violated that duty.

The defendant's seventh prayer presented the proposition

that if the defendant exercised reasonable and ordinary care in purchasing, maintaining and inspecting the coal truck and hoisting machinery attached thereto described in the evidence, and that the accident was due to the breaking of a link in a chain as a result of a latent defect therein which the defendant could not by the exercise of ordinary care have discovered, that the plaintiff could not recover. It is contended (1) that there is in the case "no evidence" that the defendant adopted any "system of rules" for the inspection of its trucks, and (2) that for that reason it was negligent. What we have said in reference to the plaintiff's 1-A prayer is also applicable to this prayer. But it may be added that, even if the special exceptions raised the point, there is in the record evidence legally sufficient to support the hypothesis of the prayer, and that the legal proposition which it submits is free from criticism. The jury could have inferred from the evidence that the truck had been inspected, and whether the inspection was adequate was a matter for them to determine, and if they found that the inspection had been adequate and careful, there is no reason why they should infer negligence from the mere fact that the defendant had no definite fixed and certain rules governing such inspection, although they could have considered that fact in determining whether the inspection had been adequate.

No objection was urged in this court to the remaining prayers granted at the instance of the defendant, and after a careful examination of them we have been able to discover none, and in our opinion they were properly granted, nor have we found any error in the court's rulings on the special exceptions to the defendant's prayers.

From what has been said it is apparent that the judgment appealed from must be reversed and a new trial awarded, if there is any evidence in the case legally sufficient to entitle the plaintiff to recover, and, if the plaintiff is not barred by contributory negligence on the part of the deceased. Upon the first point it is unnecessary to add anything to what has been said, and in our opinion there is enough in the evidence

tending to support the plaintiff's case to take it to the jury. Nor do we find that Mrs. Thompson was guilty of contributory negligence as a matter of law. It is true Dorsey testified he said to her, "Lady, please don't go under the chute," but assuming that that was a warning of danger, and whether it was or not was a question for the jury, she may not have heard it or known that Dorsey was addressing her. There must have been some noise from the coal running through the steel chute, and while his co-employee with his head through the cellar window said he heard Dorsey call, a woman standing on her steps three doors away did not hear him. And in the absence of any clear and definite warning of danger, we cannot say that her act in crossing under the chute was so prominent and decisive in its character as to furnish conclusive evidence of contributory negligence. *Waltring v. James,* 135 Md. 406.

For errors committed in granting the defendant's sixth prayer, and in refusing to permit the question involved in the second exception, the judgment appealed from will be reversed and the case remanded for a new trial.

*Judgment reversed and case remanded for a new trial, with costs to the appellant.*

---

Bond, C. J., filed the following dissenting opinion.

Assuming that the rulings objected to were erroneous, I am of opinion that those errors do not justify ordering the case to be tried again.