## THE H. HERBERMAN. THE BRINTON. THE LEVIATHAN.

District Court, E. D. New York. May 13, 1929.

Macklin, Brown, Lenahan & Speer, and E. F. Lamb, all of New York City, for libelant.

Burlingham, Veeder, Fearey, Clark & Hupper, and Norman M. Barron, all of New York City, for P. R. R. Co.

William A. De Groot, U. S. Atty., and Anthony M. Menkel, both of Brooklyn, N. Y., for the United States.

INCH, District Judge. Libelant owns the canalboat Herberman which he claims was damaged by the carelessness of the tug Brinton. He has libeled that tug. Her owners have impleaded the owner of the Leviathan, claiming that the accident was caused solely by the latter vessel.

There is very little dispute as to the facts. On February 26, 1924, in the afternoon of what is termed, by one witness, a "fine day," with "no wind of any importance," the tug Brinton arrived off the lower end of Governors Island, about one-third of the way between the lower end of Governors Island and the mooring scow Ox. The tug had the canalboat Herberman on her starboard side by three lines: Bow and stern breast lines, which were five-inch lines, and a six-inch strap or towing line. This strap led aft to the midship of the Herberman.

About this time the captain of the Brinton saw the Leviathan "coming out of the North River down the Bay" about 600 yards away. She was below the Battery. The course of the Leviathan would cross the bow of the tug and her tow. The Leviathan blew one blast, which was answered by the tug. The Leviathan was accompanied by two tugs, one near her stern and one a short distance in her rear. The captain of the Brinton testified: "I thought she was moving slowly at first appearances." He thereupon slacked his speed. After the exchange of whistles, he stopped his engine. The Leviathan passed and her swells reached the tug. The Brinton's captain says: "At first observation I didn't think they would amount to anything like what they did; the swells are only the rolling swells like a ground swell."

However, when the first swell arrived, the captain of the tug says: "It seemed to raise the light boat (referring to the Herberman) to such an extent that the weight of the tug hung on the line (referring to this strap or towing line). That was what snapped the towing line." The tug was taking the swells bow on. Neither the stern nor breast line parted. When this strap line broke, it "allowed the two boats to fall apart and the next swell threw them sharply together and broke the planks in the side of the boat Herberman."

The above in substance is a description of the accident. After it had occurred, the tug "backed up and put on a new strap and proceeded to the scow Ox.

The Sandy Hook pilot in charge, at the time, of the Leviathan testified, and naturally had a little recollection of any such incident. There appears to have been nothing unusual arising to attract his attention. He says: "I don't remember anything out of the ordinary."

There is some question as to the speed of the Leviathan, but it is apparent that she was closely accompanied by two tugs.

Counsel for the Brinton calls attention to the fact that the master of the Herberman was not produced as a witness and that libelant relied solely on his captain to prove the case. There is also an absence of clear proof as to the actual condition of the canalboat prior to the accident.

However, I have carefully read all the testimony, as well as having heard it, and seen the witnesses, and in my opinion this was a case of pure accident.

Huge steamers such as the Leviathan must go up and down the bay and they necessarily will produce swells. They, like smaller vessels, must exercise reasonable care in this regard, but it is impossible to restrict traffic merely because of unfortunate damage. It is not an injury that gives a cause of action, but negligence resulting in that injury. Benedick v. Potts, 88 Md. 55, 40 A. 1067, 41 L. R. A. 478.

The burden of proof is upon libelant to prove by a fair preponderance of evidence that such negligence was present and caused the accident.

On certain occasions resort may be had to proof of the circumstances of the occurrence in order to raise an inference of neglect, calling on the respondent to explain, and, in the absence of such explanation, sufficient to support a recovery. See Erie R. Co. v. Murphy (C. C. A.) 9 F.(2d) 525.

But the mere facts here that a towing strap broke, causing the tug and her light tow to come in contact, due to swells produced by a passing of a large steamer, is insufficient unless accompanied by proof of some neglect to use due care by the parties charged with the causing the accident.

To be sure, it might be urged that the captain of the tug should not have proceeded so near the oncoming Leviathan, but the testimony shows that he saw nothing out of the way in the situation and felt he was perfectly safe in awaiting the passing of the steamer. Ferryboats and other smaller crafts had passed without accident, and there was then nothing unusual about the appearance of the Leviathan, or her swells, except that she was possibly the largest ship in the harbor. It would be asking too much of the captain of the tug to compel him to turn around and run away. He did the right thing, brought his bow up to ride what he thought were ordinary swells. I find no negligence on his part.

As to the Leviathan, I am unable to believe from the proof that she was proceeding at excessive speed or was careless. She was still accompanied by tugs, and, while her mere size and the results thereof may cause considerable irritation to smaller crafts, she has a right to be in the harbor, and the reasonable results which come from her going up or down must be expected and anticipated.

This does not mean that the Leviathan or any other large steamer can fail to use due care in navigating up and down the river or bay or give such vessels the right to do as they please.

But although the captain of the tug says he blew an alarm, a reading of all his testimony and that of the other witnesses indicates nothing that would justify an alarm, and I do not believe he blew it.

The libelant has failed to prove negligence on the part of either the tug or the Leviathan by a fair preponderance of evidence. The result is a pure accident which, however unfortunate, is not the basis of a recovery against either the tug towing the canalboat or the steamer whose swells are claimed to have caused it.

Libel and petition dismissed, with costs.